Isaac B. MITCHELL, Plaintiff-Appellee,

v.

FRUEHAUF CORPORATION and Fruehauf Corporation d/b/a Hobbs Trailers Division, Defendants-Appellants.

No. 75–3886.

United States Court of Appeals,
Fifth Circuit.

March 3, 1978.

Rehearing and Rehearing En Banc
Denied April 3, 1978.

H. Lee Godfrey, John T. Anderson, Austin, Tex., for defendants-appellants.

L. Tonnett Byrd, Dick M. Allison, Don L. Davis, Austin, Tex., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and FAY, Circuit Judges.

AINSWORTH, Circuit Judge:

Defendant Fruehauf Corporation appeals from a judgment entered pursuant to a jury verdict in favor of plaintiff Isaac B. Mitchell. The jury awarded Mitchell $500,-000 in damages for injuries suffered in a highway accident in which a refrigerated meat trailer manufactured by Fruehauf turned over and crushed Mitchell, leaving him paralyzed below the waist. Plaintiff's theory of liability in this case is that the trailer was defectively designed and unreasonably dangerous when loaded with hanging quarters of meat, and that this design defect was a producing cause of the accident. Defendant contends that the jury could not properly have concluded that the refrigerated trailer was unreasonably dangerous or that the purported defect in design caused the trailer to overturn. In addition, defendant asserts that the jury instructions were inadequate, relevant evidence was excluded and improper evidence was admitted. We affirm.

*Facts*

This litigation arose out of a collision near Austin, Texas in July 1970 between a tractor-trailer owned by the Kain Cattle Company, driven by Sherrill Griffith, and a pickup truck operated by plaintiff. Defendant Fruehauf manufactured the refrigerated meat trailer, which was fully loaded with 36,742 pounds of hanging beef quarters at the time of the accident.

Mitchell first brought suit in Texas state court against Kain Cattle Company and the truck driver, Sherrill Griffith. That claim was settled in July 1972 for $450,000. In the same month Mitchell brought this suit in federal district court against Fruehauf, alleging that the collision was caused by a "defectively designed and unreasonably dangerous" refrigerated meat trailer.

It is necessary to detail the circumstances of the collision, as they are of crucial importance in determining causation in this case. Plaintiff Mitchell's pickup truck, a gravel truck, and the tractor-trailer driven by Sherrill Griffith were travelling south on U. S. Highway 183. The pickup and the gravel truck were in the right lane of the two-lane highway, ahead of Griffith's truck. The highway proceeds up an incline, veers left, then straightens out and narrows into one lane of traffic. The incline begins just before the start of the curve. Approaching the incline, Griffith drove his truck into the left lane in order to pass the gravel truck and plaintiff's pickup. Griffith testified that he was travelling at a speed of approximately 55–60 miles per hour before he began to pass the two vehicles, but that as he was going up the incline toward the curve his speed slowed to 50 m. p. h. He also testified that plaintiff's pickup was travelling 4 or 5 m. p. h. slower than he was when he began to pass the pickup. Going into the turn Griffith planned to allow the shift in the hanging meat to cause the truck to drift to the outside of the curve, thereby enabling him to make a wide turn. After Griffith was already into the curve, he noticed in his rearview mirror that he had not completely passed plaintiff's vehicle. Thus, the truck and trailer were drifting into the right lane, forcing plaintiff, also in the right lane, into the guard rail. Griffith testified that at this point he "tightened up the steering wheel," turning it further to the left. The trailer wheels on the left side came off the ground, and Griffith pulled

the steering wheel back to the right. However, as the road continued to curve left, Griffith was unable to rebalance the trailer, which turned over onto plaintiff's vehicle, seriously injuring Mitchell.

## Proof of Liability

Under Texas law, the manufacturer of a defective product is liable for damages if such defect makes the product unreasonably dangerous, and if the defect is a "producing cause" of the injury suffered by the plaintiff. *See General Motors Corp. v. Hopkins*, Tex., 1977, 548 S.W.2d 344, 351.[1] A plaintiff's contributory negligence will not defeat nor reduce the liability of the manufacturer.[2] The issues of unreasonable danger and producing cause were submitted to the jury, whose verdict was for plaintiff in this case. In evaluating the adequacy of the evidence of unreasonable danger and producing cause, we must view the evidence in the light most favorable to the jury verdict. *See Gray v. Martindale Lumber Co.*, 5 Cir., 1975, 515 F.2d 1218, 1221.

Plaintiff presented two expert witnesses who testified to the unreasonably dangerous character of refrigerated meat trailers.[3] The trailer manufactured by defendant was designed so that meat quarters can be hung from the ceiling. Plaintiff demonstrated that in the trailer that was involved in the accident which injured plaintiff, when fully loaded with hanging beef quarters, and travelling in a 150-foot radius at 14 m. p. h., the meat shifts 17 inches at the bottom, 11.6 inches at the middle and 6.97 inches at the top of the load. Defendant's expert witness, Derwyn Severy, admitted that the lateral force in the 14 m. p. h. experiment was only two-thirds of the lateral force present when the trailer unsuccessfully negotiated the turn at 45 m. p. h. Dr. Jindra,[4] an expert witness for the plaintiff, calculated that in a fully loaded trailer the center of gravity would shift 8 to 10 inches by reason of the movement of the hanging

---

1. In the context of conscious design choices, "defect" and "unreasonably dangerous" are synonymous. *See Simien v. S. S. Kresge Co.*, 5 Cir., 1978, 566 F.2d 551 (interpreting Texas law); *Bowman v. General Motors Corp.*, E.D. Pa., 1977, 427 F.Supp. 234, 242–43; *Miller v. Bock Laundry Machine Co.*, Tex.Civ.App., 1977, 551 S.W.2d 775, 779 (writ granted); *Wright v. Climatic Air Sales, Inc.*, Tex.Civ. App., 1975, 527 S.W.2d 518, 519; Keeton, *Product Liability and the Meaning of Defect*, 5 St. Mary's L.J. 30, 32 (1973).

"Unreasonable danger" was defined in *Henderson v. Ford Motor Co.*, Tex., 1974, 519 S.W.2d 87, 92: "[d]id some feature of the form or material or operation . . . threaten harm to persons using the automobile to the extent that any automobile so designed would not be placed in the channels of commerce by a prudent manufacturer aware of the risks involved in its use or to the extent that the automobile would not meet the reasonable expectations of the ordinary consumer as to its safety?"

"Producing cause" means contributing cause. In *Rourke v. Garza*, Tex., 1975, 530 S.W.2d 794, 801, the Texas Supreme Court approved the following definition of producing cause: " 'an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any. There can be more than one producing cause.' "

For a discussion of the underlying rationales of strict liability for product design, *see generally* Holford, *The Limits of Strict Liability for Product Design and Manufacture*, 52 Tex.L.Rev. 81

(1973); Keeton, *Manufacturer's Liability: The Meaning of "Defect" in the Manufacture and Design of Products*, 20 Syracuse L.Rev. 559 (1969). The contours of product liability law in Texas are outlined in 31 Sw.L.J. 940 (1977).

2. *See Helicoid Gage Division of American Chain and Cable Co. v. Howell*, Tex.Civ.App., 1974, 511 S.W.2d 573, 575 (writ ref'd n. r. e.). *See generally* Noel, *Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk*, 25 Vand.L.Rev. 93, 105–19 (1972).

If, however, plaintiff misuses the product, such misuse is unforeseeable by the supplier, the increased risk is foreseeable by the plaintiff, and the misuse is a concurrent proximate cause of the injury, plaintiff's recovery will be reduced. *See General Motors Corp. v. Hopkins*, Tex., 1977, 548 S.W.2d 344, 351. *See generally* 31 Sw.L.J. 940 (1977) (discussing *General Motors Corp. v. Hopkins*).

3. The deposition of Mr. Francis Kain of the Kain Cattle Company was introduced at trial. Kain stated that the different refrigerated meat trailers in use were very much the same, and have nearly identical inside dimensions.

4. Dr. Jindra's qualifications included previous experience in vehicle dynamics, designing specialized vehicles and work on an experimental safety car built for the Department of Transportation.

meat. Plaintiff's other expert witness, John Bentley,[5] explained the risk of turn-over resulting from the shift in the center of gravity when negotiating a curve. Bentley emphasized the inability of drivers to anticipate the handling problems caused by the instability of hanging meat trailers. Bentley estimated that the center of gravity would shift approximately 18 inches at 45 m. p. h. on the curve where the accident occurred. Both Jindra and Bentley expressed the opinion that the Fruehauf trailer was unreasonably dangerous because of the unrestrained movement of the hanging meat. When defendant's expert witness, Wayne Thompson, was asked if he thought that a shift of 17 inches or more at the bottom of hanging meat "would be a dangerous problem driving up and down the roadway," and "naturally create a dangerous situation in the van," he agreed that it probably would be dangerous.

In addition to this expert testimony on the unreasonably dangerous character of the hanging meat trailers, plaintiff presented the testimony of five truck drivers. All the drivers had handled hanging meat trailers. Wilbur Moore, a truck driver with 36 years' experience,[6] testified that these trailers are very hazardous because of their unpredictable handling qualities, especially when evasive maneuvers are necessary. William Sellers, also a truck driver, related an incident in which a van carrying unrestrained hanging meat turned over while he was rounding a curve at only 15–20 m. p. h. Sellers stated that hanging meat trailers were unreasonably dangerous because of their unpredictability. Like Moore, Sellers emphasized that both danger and unpredictability are at their worst when sudden changes of direction are required. The third and fourth truck drivers, Kenneth Lewis and Melvin Vent, also described the difficult handling qualities of hanging meat trailers, and agreed that such trailers were unreasonably dangerous. Charles Hawley, the fifth trucker, stated that in his opinion

hanging meat trailers were dangerous. The driver of the truck that injured plaintiff, Sherrill Griffith, also noted the special danger of hanging meat trailers in emergency situations.

Defendant responds to the evidence of unreasonable danger presented by plaintiff by contending that the special difficulties attendant to the operation of hanging meat trailers do not rise to the level of unreasonable danger because truck drivers are fully informed of the dangers of such trailers. In addition, Fruehauf argues that plaintiff's failure to prove the existence of a feasible alternative to the current design of hanging meat trailers precludes, as a matter of law, a finding of unreasonable danger.

■ Defendant's first assertion is without merit. Plaintiff's witnesses admitted that truck drivers are aware of the dangers of swinging meat, but nevertheless concluded that the trailers were unreasonably dangerous. These witnesses emphasized the unpredictability of the effect of swinging meat on the stability of the trailer, especially in situations where sudden changes in direction are necessary. Knowledge on the part of skilled operators of the dangerous character of a product should not prevent a jury from deciding that an unreasonable danger exists. This is especially true in the present case, where knowledge of the hazards of hanging meat trailers did not ensure that reasonable care would defeat the dangerous character of the product, since a crucial aspect of the danger is unpredictable handling in emergencies. Thus, the risk of injury is highest when the utility of knowledge of the dangerous qualities is lowest.

Defendant also contends that proof of a feasible alternative design is an essential part of the concept of an unreasonably dangerous product. Under this analysis, the unreasonableness of a danger presented by the use of a product is solely a matter of weighing the risk of harm, the economic

---

5. Bentley had been involved in the reconstruction of highway accidents for 16 years.

6. Moore was named national driver of the year in 1974, in honor of his 36 years and 3,300,000 miles of safe driving.

cost of altering the product, and the reduction of the degree of dangerousness that would result from adoption of the alternative design. Reliance for this view of Texas product liability law is placed principally on four recent cases interpreting Texas law: *Weakley v. Fischbach & Moore, Inc.,* 5 Cir., 1975, 515 F.2d 1260; *Wright v. Climatic Air Sales, Inc.,* Tex.Civ.App., 1975, 527 S.W.2d 518; *Henderson v. Ford Motor Co.,* Tex., 1974, 519 S.W.2d 87; *Helicoid Gage Division of American Chain and Cable Co. v. Howell,* Tex.Civ.App., 1974, 511 S.W.2d 573 (writ ref'd n. r. e.). Although the *Helicoid* opinion noted the importance of balancing risks and the costs of feasible alter-

natives when making a determination of unreasonable danger,[7] none of these cases can be read as mandating specific proof of the economic and technical feasibility of alternative designs.[8]

■ Plaintiff in this case offered several alternatives, including tying the meat to the floor and installing partitions to restrict the swinging motion of the meat. Plaintiff's experts testified that such devices were feasible, and we are unable to hold that the jury could not reasonably have been convinced by such testimony. There was no proof by defendant that the proffered alternatives were not economically

7. "To determine whether a product is unreasonably dangerous, as outlined in the design case of *Metal Window Products Co. v. Magnusen,* 485 S.W.2d 355 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.), it is necessary to weigh the risk of harm against the utility of the product, considering whether safety devices would unreasonably raise the cost or diminish the utility of the product." 511 S.W.2d 573, 577.

The *Metal Window Products* case involved a sliding glass door. The alleged defect was the absence of a permanent and recognizable object or substance in, on, or across the door to warn of the presence of glass. The court noted that the invisibility of glass doors was the very quality that made such doors desirable, and reversed the lower court's judgment in favor of the plaintiff. 485 S.W.2d 355, 358. The *Metal Window Products* court in no way mandated a rigid, mechanical balancing test wherein the plaintiff must prove the economic viability of the alternative design. The court simply noted the special utility of clear glass doors. For a discussion of the *Metal Window Products* decision, *see generally* Keeton, *Product Liability and the Meaning of Defect,* 5 St. Mary's L.J. 30, 32 (1973).

8. *Weakley v. Fischbach & Moore, Inc.,* 5 Cir., 1975, 515 F.2d 1260, included a third party action by Fischbach & Moore against the manufacturer of the electrical equipment. The Fifth Circuit court upheld a jury verdict for the manufacturer, and found that there was inadequate evidence that the design was unreasonably dangerous. Fischbach & Moore had relied principally on evidence of possible design alternatives. The court declared that this evidence by itself was insufficient to establish liability under Texas law. *Id.* at 1267. This is easily distinguishable from the present case, as the *Weakley* court held only that possible alternatives did not constitute proof of unreasonable danger absent other evidence of unreasonableness. In contrast, defendant Fruehauf asserts

that specific proof of the technical and economic feasibility of alternative designs is required even when there is other evidence that the product is unreasonably dangerous.

In *Wright v. Climatic Air Sales, Inc.,* Tex.Civ. App., 1975, 527 S.W.2d 518, the court upheld a judgment for defendant. The court concluded that plaintiff had not introduced any evidence that the device in question was defective, and noted in passing that there was no evidence that a better design was available. *Id.* at 519. The court did not address any requirement of formally balancing risks, costs and utilities.

*Henderson v. Ford Motor Co.,* Tex., 1974, 519 S.W.2d 87, was a reversal of the jury's finding in favor of plaintiff. The Supreme Court of Texas declared that the existence of a "better" or safer design was not enough to support a finding of liability. *Id.* at 93. The court also rejected the jury's finding that the purported "defect" was a producing cause of the accident. *Id.* at 93–94. There was no mention of any necessity of formally balancing risks and the costs of alternative designs.

In *Helicoid Gage Division of American Chain and Cable Co. v. Howell,* Tex.Civ.App., 1974, 511 S.W.2d 573 (writ ref'd n. r. e.), the Texas court affirmed a judgment for plaintiff after a jury trial. A pressure gage exploded while plaintiff was operating it, and a piece of the glass lens was thrown into his eye. As a very inexpensive safety shield would have prevented the injury without impairing operation of the gage, and the manufacturer had failed to adequately warn of the danger attendant to use of the gage without the safety shield, the court found the jury's verdict amply supported by the evidence. The "balancing" in *Helicoid* was of the most perfunctory type, as no mention was made of the degree of risk presented by the design without a safety shield. The court simply decided that since the safety device was inexpensive, it should have been part of the standard equipment.

feasible, or that they would not successfully restrain the hanging meat. Even defendant's expert in meats and meat chemistry, Dr. Carpenter, admitted that a practical way to restrict the swinging could be developed. Thus, the jury reasonably could have concluded under the circumstances here that the special dangers of the hanging meat trailer manufactured by defendant constituted an unreasonable danger, and that feasible alternative designs that effectively restrict the dangerous swinging motion were available or could be developed.

In addition to proving that the hanging meat trailers are unreasonably dangerous, plaintiff must demonstrate that the defective condition was a producing cause of the accident. If the truck driver's excessive speed or otherwise negligent handling of the tractor-trailer would have caused the accident without the instability caused by the swinging meat, then plaintiff cannot recover from Fruehauf.

▮▮▮ Both of plaintiff's expert witnesses testified that in their opinion the instability in the trailer resulting from the swinging meat caused the accident. Dr. Jindra calculated the turnover speed of a fully loaded hanging meat trailer on the accident curve to be between 45 and 50 m. p. h. This calculation was for a steady curve, without the evasive maneuver described by the truck driver. The posted suggested speed for that curve was 45 m. p. h. In addition, Dr. Jindra estimated the turnover speed for a truck with an average load of the same weight but without the shift in the center of gravity caused by the swinging meat to be 63.6 m. p. h. Plaintiff's other expert witness, John Bentley, was experienced in highway accident reconstruction. Bentley calculated that the truck was travelling at a speed between 42 and 46 m. p. h. when the trailer began to tilt. After studying the skid marks on the highway, Bentley concluded that the truck did not brake at any point prior to the collision, and that the driver made no sharp turn in his effort to avoid forcing plaintiff into the guard rail. Bentley also estimated the truck's speed at the time the first skid marks were left on the pavement. Accepting the driver's testimony that he was accelerating when the trailer began to tilt, the approximate speed was 41 to 45 m. p. h. The driver of the tractor-trailer, Sherrill Griffith, stated that in his judgment the swinging beef caused the turnover, and that his speed and evasive maneuvers would not have resulted in an accident if he was not carrying unrestrained hanging meat. Thus, plaintiff's evidence indicates that the truck was not being driven at an excessive speed, and that no unreasonably sharp turn or imprudent braking caused the turnover. We conclude that plaintiff offered sufficient evidence to convince a reasonable jury that the hanging meat trailers manufactured by defendants, without restraints to limit the swinging motion of the meat, are unreasonably dangerous and that the shifting of the hanging beef quarters in this case was a producing cause of the collision that has crippled plaintiff.

*Jury Instructions*

Defendant contests the propriety of certain portions of the jury instructions given by the trial court, urging that the instruction concerning unreasonable danger was inadequate and that the court erred in refusing to instruct the jury on misuse, assumption of risk and causation. We find no error in the trial court's instructions.

▮▮▮ On the issue of unreasonable danger, defendant argues that the instruction should have contained some reference to a balancing of risks, utilities and costs of the current and the alternative designs. As discussed previously, the balancing test so strongly urged by defendant is simply an expression of the concept of unreasonable danger, "a concept that necessarily implies a balancing of a product's utility against the danger." *Borel v. Fibreboard Paper Products Corp.*, 5 Cir., 1973, 493 F.2d 1076, 1091 (interpreting Texas law and rejecting a claim identical to that put forth by defendant). *Cf. General Motors Corp. v. Simmons*, Tex.Civ.App., 1976, 545 S.W.2d 502, 513–14 (writ granted) (declaring that the trial court's refusal to give a similar balanc-

ing instruction was not incorrect). The instruction in this case is an accurate adaption of a description of unreasonable danger contained in *Henderson v. Ford Motor Co.*, Tex., 1974, 519 S.W.2d 87, 92.[9] This expression of the meaning of unreasonable danger was recently cited by the Texas Supreme Court in *General Motors Corp. v. Hopkins*, Tex., 1977, 548 S.W.2d 344, 347 n. 1, and by this court in *Simien v. S. S. Kresge Co.*, 5 Cir., 1978, 566 F.2d 551 [No. 76–1020,] (interpreting Texas law).

■■■■ Defendant's insistence on an instruction regarding misuse by the driver of the tractor-trailer is equally unwarranted. Misuse is not synonymous with contributory negligence. *See Helicoid Gage Division of American Chain and Cable Co. v. Howell*, Tex.Civ.App., 1974, 511 S.W.2d 573, 575 (writ ref'd n. r. e.). *See generally* Noel, *Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk*, 25 Vand.L.Rev. 93, 95–105 (1972). In *General Motors Corp. v. Hopkins*, Tex., 1977, 548 S.W.2d 344, 351, the Texas Supreme Court declared that misuse was not a defense in a defective products case "where the product is dangerous for its foreseeable use and that danger is a producing cause of the injury of a bystander or a user who has not himself made some unforeseeable use of the product."[10] Whatever improper or imprudent driving of the tractor-trailer might have taken place in this case, it cannot reasonably be contended that such errors rise to the level of unforeseeable misuse. Defendant must have been aware of the possibility that truck drivers will face situations where evasive maneuvering at relatively high speeds will be necessary. As

there was no possibility of unforeseeable misuse by the truck driver, no instruction on that issue was necessary.[11]

■■■■ The proffered instruction by defendant on assumption of risk was also correctly refused by the trial court. Assumption of risk is a proper defense to a strict liability action in Texas, but the defense requires a voluntary exposure to a known and appreciated risk. *See Henderson v. Ford Motor Co.*, Tex., 1974, 519 S.W.2d 87, 90–91. *See generally* Noel, *Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk*, 25 Vand.L. Rev. 93, 119–28 (1972). There is clearly no such knowing exposure to danger by the plaintiff in this case. It could hardly be said that plaintiff, a bystander, appreciated the special risk that the instability of the unrestrained hanging meat trailer presented. Nor is it likely that the driver of the tractor-trailer, suddenly faced with an emergency situation, voluntarily and knowingly ran the risk of a turnover.

■■■■ Defendant also contends that the jury should have been instructed on the issue of whether the truck driver's or plaintiff's negligent driving, or both, were the sole cause or causes of the accident. Such an instruction would be redundant, as the issue of other causes is covered in the "producing cause" instruction.

*Admissibility of Evidence*

■■■■ The final four contentions urged by defendant as justifying reversal of the jury's verdict all concern the admission of evidence. First, the trial court refused to admit potentially prejudicial evi-

---

9. The trial court in the present case instructed the jury that

   "[t]he term 'defective and unreasonably dangerous' means that some feature of the Meat Reefer Van in question threatened harm to persons using the trailer, or to bystanders, to the extent that any trailer so designed would not be placed in the channels of commerce by a prudent manufacturer aware of the risks involved in its use, or to the extent that the trailer would not meet the reasonable expectations of the ordinary consumer as to its safety."

   Compare this instruction with the passage from *Henderson* quoted in note 1.

10. For a discussion of the *General Motors* case, *see generally* 31 Sw.L.J. 940 (1977).

11. Another recent Texas case approving the reasonable foreseeability standard is *Magic Chef, Inc. v. Sibley*, Tex.Civ.App., 1977, 546 S.W.2d 851 (writ ref'd n. r. e.). Like the instant case, the defendant in *Magic Chef* was appealing the trial court's refusal to instruct the jury on the issue of possible misuse of the product. *Id.* at 856.

dence of plaintiff's conduct prior to the accident. Since contributory negligence is no defense in a product liability action in Texas, and the defect need only be a producing cause of the accident, plaintiff's conduct in this case is irrelevant, and therefore the trial court's ruling was correct. Second, defendant claims that the pleadings in plaintiff's previous suit against the truck driver and the trucking company should have been admitted to show that plaintiff had argued that the truck driver's negligent conduct had caused the accident. Prior pleadings are admissible if such pleadings indicate that the party against whom they are admitted has adopted a position inconsistent with that in the earlier litigation. *See Texas General Indemnity Co. v. Hicks*, Tex.Civ.App., 1971, 472 S.W.2d 547. The prior suit was based on negligence, which is not inconsistent with recovery in this case, as unforeseeable misuse rather than negligence is the defense to a claim based on product liability.

The third evidentiary issue concerns the testimony of the truck drivers regarding other turnovers or near turnovers of hanging meat trailers. In *Magic Chef, Inc. v. Sibley*, Tex.Civ.App., 1977, 546 S.W.2d 851, 855 (writ ref'd n. r. e.), the court noted that evidence of other accidents involving the same product is admissible if such "accidents occurred under the same or substantially similar [circumstances] as that involving the plaintiff." In *Magic Chef* the court allowed evidence of incidents in which gas ranges manufactured by defendant were inadvertently ignited by persons brushing against the control knobs. The injured person in *Magic Chef* was a young child who climbed on top of a chair, leaned over the range and accidentally ignited the stove, sustaining serious burns. The requisite degree of similarity is plainly not very high, as the only significant shared characteristics were the brand of the range and the inadvertence of ignition. Thus, the "substantially similar" standard as applied in *Magic Chef* is inclusive enough to allow the admission of evidence of previous turnovers involving trailers loaded with hanging meat. As previously noted, other hanging meat trailers in use are substantially similar and almost identical in interior dimensions. The relevant similarity is the lack of restraints to prevent the hanging meat from swinging, and the resulting lack of stability. In any case, it is most unlikely that admission of this evidence was prejudicial to defendant.

Finally, defendant contends that the testimony of plaintiff's expert witnesses Dr. Jindra and Bentley, and the truck drivers, as to the unreasonable danger presented by the unrestrained hanging meat trailers, was inadmissible because none of the witnesses was qualified to express an opinion on the cost feasibility of alternative designs. We cannot accept so restrictive a view of qualifications to testify as to the unreasonably dangerous nature of a product. All the witnesses established their qualifications to express an opinion on the degree of danger resulting from the design in question. Under the facts of this case, such opinion testimony was appropriate.

In this matter it was the jury's province to make the ultimate determination of the reasonableness of the danger, taking into account all the relevant factors. That decision has been made in favor of plaintiff, and was supported by substantial evidence. With due regard to defendant's several contentions, we affirm the judgment.

AFFIRMED.