Nancy L. DUGAN, Personal Representative of the Estate of Timothy Ray Brosch, Deceased, Plaintiff–Appellee,

Vera R. Devine, Individually and as Personal Representative of the Estate of Sharon Devine, Deceased, Plaintiff–Intervenor–Appellee,

v.

EMS HELICOPTERS, INC., a California corporation; Edward M. Zimmer, Jr. Trust; and Edward M. Zimmer, Jr., as Trustee of the Edward M. Zimmer, Jr. Trust and in his Individual Capacity, Defendants–Appellants.

No. 89–2059.

United States Court of Appeals, Tenth Circuit.

Oct. 1, 1990.

Rehearing Denied Nov. 6, 1990.

Susan L. Snyder, Paul R. Koller, and Bruce Hall of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., for defendants-appellants.

Jerrald J. Roehl, Corbin P. Hildebrandt, and Mark E. Komer of The Roehl Law Firm, P.C., Ray Tabet, Albuquerque, N.M., for plaintiffs-intervenor-appellee.

Before SEYMOUR, BRORBY and EBEL, Circuit Judges.

PER CURIAM.

This appeal results from the entry of jury verdicts against defendants EMS Helicopters, Inc. (EMS) and Edward M. Zimmer, Jr., as trustee of the Edward M. Zimmer trust (Zimmer) in this wrongful death action.[1] Plaintiffs are the personal representatives of decedents Timothy R. Brosch and Sharon R. Devine. Following a two-week trial, the jury returned verdicts in favor of each plaintiff and against the defendants for both compensatory and punitive damages.

On appeal, defendants assert: 1) that there was insufficient evidence to submit the issue of Zimmer's liability to the jury; 2) that there was insufficient evidence to submit the issue of punitive damages against EMS to the jury; and 3) that the court erred in not admitting into evidence a complaint plaintiffs filed against different defendants for the same injuries. We address each of these issues in turn.

### Facts

This action arises out of the crash of a helicopter near Taos, New Mexico, on January 20, 1985. Although Zimmer owned the helicopter, it was operated and maintained by EMS. At the time of the crash, the helicopter was being used in the University of New Mexico Hospital's (UNMH) patient transport program. Plaintiffs' decedents were nurses working in the program. The accident occurred while the helicopter was en route to Taos to pick up a patient. The two nurses on board, as well as the pilot, were killed in the crash.

In October, 1984, some three months before this incident took place, this helicopter ("Lifeguard I") was damaged when it hit high power lines during lift off following a passenger pick up near Moriarity, New Mexico. Rather than grounding the helicopter, the pilot continued the forty-five mile return flight to Albuquerque. After examining Lifeguard I upon its return, EMS maintenance personnel determined it was severely damaged, necessitating a tear down of the engine. This procedure would determine if there was internal damage.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

At trial, Larry Tucker, the then maintenance director of EMS, testified he called Zimmer to obtain authorization for the expensive procedure. According to Tucker, Zimmer told him he would not pay for it. Under the lease agreement between Zimmer and EMS, all repair expenditures over five hundred dollars required authorization from Zimmer. The blades on Lifeguard I were subsequently repaired but the engine was not torn down. Expert witnesses testified the failure to identify damage to an internal turbine-to-pinion coupling resulted in a loss of power to the engine which contributed to the crash.

Plaintiffs also introduced extensive testimony indicating pilot error contributed to the crash and asserted EMS put undue pressure on their pilots to fly long and irregular hours. There was testimony that EMS wanted to complete as many missions as possible so that its contract with UNMH would be renewed. With regard to Zimmer, there was evidence introduced showing he had declined to provide for other helicopter equipment in the past, despite repeated requests from EMS personnel. In particular, former maintenance employees testified they requested "snow baffles" for the helicopter which were designed to prevent ice build up in the engine. Plaintiffs' expert testified that the weather conditions on the night in question were such that snow baffles were needed and could have prevented the crash. EMS employees also requested a "chadwick," which is an instrument used to detect engine malfunctions. This request was also denied.

The jury found both defendants negligent and awarded compensatory damages to Nancy L. Dugan in the amount of $500,000 and Vera Devine in the amount of $80,000. The jury also awarded punitive damages to Dugan in the amount of $900,000 against EMS and $600,000 against Zimmer and to Devine in the amount of $144,000 against EMS and $96,000 against Zimmer.

### Sufficiency of the Evidence

As an appellate court, our review of the evidence in a civil case based on diversity jurisdiction is "limited to the inquiry as to whether the record contains substantial evidence to support the jury's or court's conclusion, viewing the evidence in the light most favorable to the prevailing party." *Kitchens v. Bryan County Nat'l Bank,* 825 F.2d 248, 251 (10th Cir.1987). Moreover, it is the sole province of the jury to appraise credibility, draw inferences, determine the weight to be given testimony and to resolve conflicts in the facts. *Id.* We have noted that a jury finding based on sharply conflicting evidence is binding on appeal. *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.,* 571 F.2d 1144, 1149 (10th Cir.)., *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978). It is with these principles in mind that we examine the arguments presented here.

### A. Sufficiency of the evidence with regard to Zimmer

EMS and Zimmer contend the evidence was insufficient to send the issue of Zimmer's liability to the jury. They argue the trial court erred in failing to direct a verdict in their favor. We disagree. Defendants base their argument on what they describe as the incredible testimony of maintenance director Larry Tucker. During trial, Zimmer testified he never received the phone call from Tucker regarding the tear down and would have authorized it if he had known about it. Zimmer's testimony and the exhibits accompanying it indicated he was overseas at the time the alleged phone call to his office was made and therefore could not have received it. Further, Zimmer disputed the testimony regarding requests to add other equipment to the helicopter. In particular, he stated no one ever made a request to put snow baffles on Lifeguard I. Zimmer testified he had never heard of them prior to commencement of this lawsuit.

■ This situation presents a classic example of a jury determination based on sharply disputed evidence, and we will not disturb the jury's conclusions on appeal. The jury was presented with conflicting evidence and made a determination based

on the collective credibility and reliability of that evidence. This falls squarely within its factfinding role. *See Rasmussen*, 571 F.2d at 1149.

 Likewise, we uphold the court's decision to send the issue of punitive damages to the jury. In New Mexico, a jury may assess punitive damages if the conduct in question is willful, wanton, or grossly negligent. *Gonzales v. Sansoy*, 103 N.M. 127, 703 P.2d 904, 906 (Ct.App. 1984). There was sufficient evidence of gross misconduct on Zimmer's part to make this a jury question. Witnesses testified that he denied requests for maintenance and equipment due to cost despite knowing the items were safety related. Further, Zimmer was a pilot himself and recognized the need to properly maintain the helicopter. Viewing the evidence in the light most favorable to the plaintiffs, there was sufficient evidence to support submission of this issue to the jury.

### B. *Sufficiency of the evidence with regard to EMS*

 Likewise, we hold there was sufficient evidence under the standard enunciated above to send the issue of punitive damages against EMS to the jury. The evidence indicated EMS put undue pressure on its pilots to complete missions and put pressure on this pilot in particular to lose weight. Plaintiffs' witnesses testified the contract with the hospital was nearing expiration, and EMS urged pilots to complete missions so that the contract would be renewed. The pilot flight records introduced at trial showed irregular and long hours. Finally, there was evidence indicating EMS dismissed concerns from the flight nurses regarding the condition of the helicopters and failed to attend meetings designed to discuss those concerns. Based on these facts, the district court did not abuse its discretion in submitting the punitive damages issue to the jury.

**2.** Textron, Inc. is the parent corporation of Bell Helicopter. General Motors Corporation is the

### Admissibility of Pleadings

We now turn to defendants' final argument regarding the admissibility of the complaint which plaintiffs filed just prior to commencement of trial in this matter. On January 19, 1988, plaintiffs filed a complaint in the United States District Court for the District of New Mexico naming Bell Helicopter, Detroit Diesel Allison, and Lone Star Helicopter as defendants ("Ancillary complaint"). Bell Helicopter is the manufacturer of this helicopter.[2] Detroit Diesel Allison manufactured the engine and Lone Star Helicopter is a maintenance facility which worked on the helicopter following the October, 1984 wire strike. The specific issue we must address is whether this "ancillary" complaint can be introduced as an evidentiary admission or inconsistent statement in this action.

During trial, defendants attempted to introduce the ancillary complaint for impeachment purposes and as an evidentiary admission. Rec.Vol. IX at 29, 37. The district court ruled the complaint was not admissible because the allegations in it were not inconsistent with the position plaintiffs pursued in this case. Rec.Vol. IX at 127. Instead, it allowed submission of a comparative fault jury instruction which included the secondary defendants. The court stated:

> Well, in view of those positions of the Plaintiffs to the effect that they will not object to the fault of Bell, Allison and Lone Star being compared by the jury in this case, I'm not going to admit as an exhibit the complaint in the other lawsuit and will not permit inquiry about it because I think, in that instance, then it's not an inconsistent position.

*Id.* On appeal, defendants argue this ruling constitutes an abuse of discretion. *Fox v. Mazda Corp. of Am.*, 868 F.2d 1190, 1194 (10th Cir.1989).

 In this circuit, inconsistent allegations contained in prior pleadings are admissible in subsequent litigation. *Glaesman v. Shop–Rite Foods, Inc.*, 438 F.2d

parent of Detroit Diesel Allison.

**1432**

341, 342 (10th Cir.1971); *Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir.1970); *Parkinson v. California Co.*, 233 F.2d 432, 438 (10th Cir.1956). Historically, where a plaintiff files a lawsuit against different defendants for the same injuries, allegations from that prior complaint are considered evidentiary admissions against interest. *Glaesman*, 438 F.2d at 342.

In *Parkinson*, the plaintiffs filed separate lawsuits in state and federal court. In the state court action, they alleged various defendants were negligent and contributed to their injuries. 233 F.2d at 435. In the federal action, however, they alleged that only one of the defendants was at fault. *Id.* Although the court rejected the argument that the prior allegations constituted absolute admissions, it did allow for their introduction, stating: "The inconsistent statements may be evidentiary as admissions—convincing, persuasive or of little weight, according to the particular circumstances...." *Id.* at 438. Thus, the court held the trial court properly considered the prior pleadings. *Id.*

Likewise, in *Glaesman*, this court affirmed a district court ruling which allowed plaintiffs to read into the record pleadings containing inconsistent allegations. 438 F.2d at 342. In that case, Shop–Rite denied it was liable for injuries the plaintiff sustained when she slipped in the grocery store's parking lot. *Id.* at 341–42. However, prior pleadings from a state court action indicated Shop–Rite ·had already sued its landlord for leasing those exact premises in an unreasonably dangerous condition. *Id.* This court held the prior pleadings constituted an "indisputable admission against interest on a material issue." *Id.* at 342.

■ In more recent cases, other circuits have allowed introduction of prior inconsistent pleadings as substantive evidence pursuant to Fed.R.Evid. 801(d)(2). *See Williams v. Union Carbide Corp.*, 790 F.2d 552, 556 (6th Cir.), *cert. denied*, 479 U.S. 992, 107 S.Ct. 591, 93 L.Ed.2d 592 (1986); *Vincent v. Louis Marx & Co.*, 874 F.2d 36, 38–40 (1st Cir.1989); *Mason v.*

*Texaco, Inc.*, 129 F.R.D. 542, 544 (D.Kan. 1989). In addition, prior pleadings may be introduced on cross examination for use as an impeachment tool under Fed.R.Evid. 613. *Williams*, 790 F.2d at 556; *see also Parkinson*, 233 F.2d at 438 (acknowledging that former pleadings normally come into case as admissions or by way of impeachment).

■ In order to make a determination whether the ancillary complaint in this case is admissible, we must address whether its allegations are inconsistent with the position plaintiffs took at trial. *See Parkinson*, 233 F.2d at 438 (although prior statements will not absolutely foreclose a party from asserting a contrary position, they may be used as evidentiary admissions); *see also Kassel v. Gannett Co.*, 875 F.2d 935, 952 (1st Cir.1989) (allowing introduction of inconsistent ancillary appellate brief where evidence is highly relevant and directly "contrary to [plaintiff's] position at trial") (quoting *United States v. Palow*, 777 F.2d 52, 56 (1st Cir.1985), *cert. denied*, 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986)). This inquiry requires careful review of the evidence, pleadings, and statements of counsel in this action.

The pertinent allegations from the two complaints filed in this case state Zimmer and EMS caused the wrongful deaths of plaintiffs' decedents. For example, paragraph nineteen of plaintiff Dugan's amended complaint states:

The helicopter was improperly maintained by defendants, causing it to be in a defective and unreasonably dangerous condition on January 20, 1985, which directly and proximately caused the death of plaintiff's decedent, as a result of which defendants are strictly liable in tort to plaintiff for damages.

Rec.Vol. I doc. 27 at ¶ 19. Plaintiff Devine alleged similar conduct in her complaint in intervention. *See* Rec.Vol. I doc. 88 at 8 ¶¶ 1, 2.

At trial, counsel for both plaintiffs reiterated this position. In opening statements, counsel for plaintiff Devine stated: "I believe the defendants will claim that there were other parties responsible who

are not parties to this particular action and that they will try to blame other entities. *We don't feel that there was improper conduct on the part of any of these other parties."* (Emphasis added.) Rec.Vol. III at 64. Likewise, plaintiff Dugan's closing argument to the jury contained the following statement:

[W]ith regard to item number 6, comparing the fault, this has to do with whether anyone else is at fault. We feel that this should be fairly easy for you to go through. Textron, Bell Helicopters, General Motors, Allison. The only conceivable involvement they would have would have to do with the repair manuals. You'll recall Dr. Kadlec said, and I believe Mr. Tucker as well, what you're talking about there are the minimum standards. *A repair manual cannot give every possible reason to do an engine tear down. We don't feel that there is any evidence, really, that would mean that Bell Helicopters or General Motors are at fault. So we feel this should be zero.*

As to Lone Star Helicopters, zero as well. And the reason is that Mr. Noland and Lone Star did everything they could. They recommended the engine tear down. You'll recall they were not the company that would even have done it. They would have sent the engine out. They said, "Do the engine tear down." The owner says, "don't do it. I'm not going to pay for it."

*We do not believe there should be any fault attributable to them.*

(Emphasis added.) Rec.Vol. XIII at 9–10. Throughout the trial, plaintiffs consistently maintained that only EMS and Zimmer caused this accident. In fact, they presented no evidence at all against any of the ancillary defendants.

In contrast, the complaint filed against the ancillary defendants states they were, in fact, proximate contributors to the accident. For example, paragraph eighteen of that complaint states:

Lone Star Helicopter was negligent, grossly negligent, reckless and acted with a conscious disregard for the safety of plaintiffs' decedents and others and proximately contributed to plaintiffs' decedents' wrongful deaths when its employee or employees, after having first recommended a tear down and visual inspection of the helicopter's engine based upon the damage the employee or employees found, certified the helicopter to be in an airworthy condition when, in fact, it was not, without first conducting such an engine tear down and visual inspection.

*See* Addendum to Appellants' Brief. The allegations against the other defendants are similar. They are directly contrary to the position plaintiffs took at trial, as evidenced by the statements recited above. The totality of the position taken in the immediate case is inconsistent with the allegations contained in the ancillary complaint.

Plaintiffs, however, argue that the ancillary complaint is not inconsistent with the position taken at this trial because the theories of recovery in the two actions are not mutually exclusive. In support, they rely on cases from the First and Fifth Circuits where the courts refused introduction of prior pleadings upon a finding that the allegations in the lawsuits were not inconsistent. *See Estate of Spinosa v. International Harvestor*, 621 F.2d 1154, 1157 (1st Cir.1980); *Mitchell v. Fruehauf Corp.*, 568 F.2d 1139, 1147 (5th Cir.1978); *see also Garman v. Griffin*, 666 F.2d 1156, 1158–59 (8th Cir.1981) (Arnold, J., dissenting) (amended complaint not admissible where use of pleadings would interfere with recognized principles of alternative pleading under Fed.R.Civ.P. 8(e)).

The *Spinosa* decision provides a good example of plaintiffs' argument. There, the defendants sought introduction of pleadings to show the jury inconsistencies between plaintiffs' state and federal court actions. 621 F.2d at 1157. Specifically, the state court action alleged the wrongful deaths involved resulted from the failure to maintain a vehicle, while the federal court lawsuit claimed defects in the vehicle itself caused the deaths. *Id.* The Fifth Circuit held the two allegations were not inconsist-

ent and thus the state pleadings were not admissible, stating:

> Plaintiffs-appellees respond that it is not inconsistent for suit to be brought successfully against [Spinosa] and the manufacturer of the motor vehicle, since the pleadings in the prior suit claimed that Spinosa's actions were *a* cause, not *the sole* cause of the accident. Since there is no inconsistency, plaintiffs-appellees argue, the pleadings are inadmissible....
> We agree with plaintiffs-appellees.

(Citations omitted.) *Id.* Likewise, in *Mitchell,* the court determined the two positions were not inconsistent. There, the prior suit was based on a negligence theory while the *Mitchell* case asserted strict product liability claims. 568 F.2d at 1147. The court distinguished the two theories involved, stating, "The prior suit was based on negligence, which is not inconsistent with recovery in this case, as unforeseeable misuse rather than negligence is the defense to a claim based on product liability." *Id.*

In *Garman,* the issue was the admissibility of an amended, rather than prior, complaint. There, plaintiffs made alternative and inconsistent claims against two defendants. Specifically, plaintiffs' wrongful death action asserted product liability claims against a school bus seller, as well as negligence claims against the bus driver. The seller was dismissed prior to trial. Therefore, plaintiffs went forward only on the negligence claims. 666 F.2d at 1157.

The trial court allowed defense counsel to read to the jury those portions of the complaint which described the product liability claims. *Id.* The eighth circuit held it was error to introduce the amended complaint, ruling it could not be used as an admission. *Id.* at 1158. Noting the importance of Fed.R.Civ.P. 8(e)(2), which allows alternative pleading, the court stated:

> The use of pleading admissions in situations akin to the case under submission seems to us to be contrary to the spirit of the Federal Rules. Furthermore, it simply does not seem quite fair to these plaintiffs. A pleader in the Federal Courts should not have to forego a po-

tential claim rather than run the risk of having such a claim used as an admission.

*Id.* at 1160.

These cases are inapposite to the situation presented here for two reasons. First, the ancillary complaint in this case states the defendants "proximately contributed" to this accident. This allegation is not hypothetical or alternative in nature. It is an affirmative factual statement alleging direct culpability on the part of Textron and General Motors Corporation for, *inter alia,* their negligence and gross negligence which proximately contributed to the accident.

Second, the allegations from the ancillary complaint run directly counter to plaintiffs' position at trial. The *Spinosa* court found there was no inconsistency because the prior suit claimed the actions were "a cause, not the sole cause of the accident." 621 F.2d at 1157. In contrast, plaintiffs in this case did allege that the instant defendants were the sole cause of the accident. Through pleadings, evidence and argument, they asserted EMS and Zimmer solely caused this accident and should be solely responsible. They strenuously maintained the innocence of parties against whom they filed the ancillary lawsuit. For these reasons the *Spinosa, Mitchell,* and *Garman* cases are distinguishable from the case at bar.

The ancillary complaint is factually inconsistent with the position plaintiffs pursued in this case and therefore constitutes an admission against interest pursuant to Fed.R.Evid. 801(d)(2). Further, it directly contradicts plaintiffs' prior statements and therefore may be introduced for its impeachment value. The district court's ruling to the contrary constitutes an abuse of discretion.

This conclusion does not end our analysis. As with all evidence, the ultimate decision whether to admit or exclude the ancillary complaint requires balancing under Fed.R.Evid. 403. *Vincent,* 874 F.2d at 41. However, the trial court in this case did not perform this balancing test.

Normally, Fed.R.Evid. 403 balancing is a task best left to the trial judge. *Agristor Leasing v. Meuli,* 865 F.2d 1150, 1152 (10th Cir.1988) (quoting *Rigby v. Beech Aircraft Co.,* 548 F.2d 288, 293 (10th Cir.1977)). In this case, however, the complaint is so material, and so obviously relevant, that the failure to allow its introduction is harmful error requiring a new trial. *See United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990) ("nonconstitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect"). We base this assessment on several points.

First, the ancillary complaint is highly relevant to the allocation of fault in this case. If the jury knew plaintiffs had alleged the secondary defendants were liable for failing strongly to advise EMS and Zimmer of the necessity of a tear down, the liability of EMS and Zimmer could have been directly reduced. The ancillary complaint specifically alleges the secondary defendants were negligent for not requiring the tear down. It is impossible to determine what effect this important evidence would have on the jury's verdict against EMS and Zimmer.

Second, the complaint is directly relevant to the issue of punitive damages. During trial, plaintiffs opined that there was no excuse for the failure of EMS and Zimmer to tear down this engine. The ancillary complaint, however, appears to explain this failure. It alleges, in part, that the ancillary defendants did not advise EMS and Zimmer adequately regarding the result of failing to perform the tear down. This explanation is directly relevant to both the existence and amount of punitive damages.

Third, the complaint is relevant for impeachment. Although we recognize that plaintiffs in this case were not central liability witnesses, their credibility was significant because they were the beneficiaries of the jury's verdict. Evidence implicating that credibility is clearly relevant. In the *Williams* case, the Sixth Circuit noted that prior pleadings are relevant not only to support an intervening cause theory, but

also to expose the plaintiff's *belief* that more than one party was at fault. 790 F.2d at 556. We agree with this analysis.

For all these reasons, we hold that the trial judge should have introduced this evidence under a Rule 403 balancing test. Further, in light of its obvious relevancy, this failure cannot be harmless. Fed.R. Evid. 103(a); *Rivera,* 900 F.2d at 1469.

Accordingly, we REVERSE and REMAND to the district court for a new trial. As part of that trial, the ancillary complaint should be admitted. The judgment of the United States District for the District of New Mexico is REVERSED and REMANDED for further proceedings consistent with this opinion.