**Roy D. BENNETT, et ux, Appellants,**

v.

**SPAN INDUSTRIES, INC., Appellee.**

No. 8943.

Court of Appeals of Texas, Texarkana.

Dec. 22, 1981.

Rehearing Denied Jan. 26, 1982.

---

W. McFarland Bagby, Arlington, for appellants.

Robert H. Frost, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellee.

CORNELIUS, Chief Justice.

Roy Bennett, an employee of the air conditioning and sheet metal subcontractor on a construction project near Sherman, was seriously injured when he fell through an

opening in a concrete roof system manufactured by Span Industries and installed by its subcontractor. Suit was brought against Span on the theories of products liability and common law negligence. Based upon the pleadings and depositions on file, the trial court granted Span's motion for summary judgment.

The building was constructed for Oscar Mayer Company by the general contractor, Ragnar Benson, Inc. Span was engaged to construct concrete beams and columns for the walls of the building, as well as pre-cast concrete "double tee" panels for the upper roof deck. Ultimately the deck would be covered with insulation and other material to make what is known as a "built up" roof. According to the design specified by Oscar Mayer's architects, the roof panels were to be placed so as to leave numerous openings for skylights and exhaust fans. Span manufactured and furnished the prefabricated concrete double tees, which were then installed at the construction site in the configuration specified by the architects' plans, resulting in the desired open spaces, which were four feet wide and seven feet long, and were uniformly spaced twenty-four feet apart. The component concrete panels were shipped to the job by Span from its manufacturing plants in Dallas and were installed in the building by Span's subcontractor, McCaslin Steel Erection Company. The work of both Span and McCaslin was completed and both had left the work site some two months before Mr. Bennett's injury. At the time of his fall, Mr. Bennett's job was to drill holes in the roof panels from which he would hang supports for the air conditioning ducts. The openings in the roof deck were plainly visible, and Mr. Bennett's supervisor called his attention to the open spaces before he began his work. The spaces were neither covered nor enclosed by railings. There was summary judgment evidence that contractors performing similar work usually either covered the spaces with plywood or provided four foot guard rails of 2 × 4's around the openings. Summary judgment evidence was also produced to the effect that the Occupational Safety and Health Act's regulations required openings

of that kind to be covered or otherwise protected. Span's subcontract with Ragnar Benson required that Span comply with all OSHA regulations.

We have concluded that Mr. Bennett's summary judgment evidence failed to raise a genuine issue of fact as to his products liability claim, but that he did produce evidence sufficient to raise a fact issue on his cause of action for common-law negligence.

 The policy underlying the imposition of strict liability in products cases is that one engaged in the business of introducing products into the stream of commerce should be liable for physical harm caused by such products if, by reason of defective design or manufacture, they are unreasonably dangerous to the user or consumer. *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975); *Darryl v. Ford Motor Company*, 440 S.W.2d 630 (Tex.1969); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex. 1967); Restatement (Second) of Torts § 402A (1965); Green, *Strict Liability Under Sections 402A and 402B: A Decade of Litigation*, 54 Texas L.Rev. 1185 (1976). To support the imposition of liability, there must be a defect in the design or manufacture of the product with resulting injuries to the user. We find a complete absence of summary judgment evidence tending to show that Span introduced into commerce a defectively designed or manufactured product. It did not design or manufacture an integrated roof containing defectively designed or dangerous openings; it simply manufactured and sold concrete sections which were then installed according to the design specified by the owner. Had one of the sections been defectively designed or manufactured so that it gave way with Mr. Bennett or otherwise caused him to fall, a legitimate claim of products liability might be made. But where no defect in design or manufacture of the components has been alleged or demonstrated, a showing that Mr. Bennett fell through one of the openings designed and specified by the owner of the custom made building falls short of the nature of proof required for the imposition of strict products liability in this case. We

do not consider it proper to extend the doctrine of strict liability to the furnisher of components installed in a building according to the design of the owner or builder when the injuries are caused by the design of the building itself, rather than by defects in the components. Further, in view of the undisputed evidence that the skylight openings were open and obvious and Mr. Bennett's superior warned him of the danger before he began his work, we also conclude that the summary judgment evidence established as a matter of law that Mr. Bennett voluntarily assumed the risk, a fact which constitutes a defense to the products liability action. *Ruiz v. Flexonics,* 517 S.W.2d 853 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.); *Helicoid Gage Division of American Chain & Cable Co. v. Howell,* 511 S.W.2d 573 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.); Restatement (Second) of Torts § 402A, comment *n* (1965).

■ We find, however, sufficient summary judgment evidence to raise a genuine issue of fact as to Span's liability for common-law negligence. Voluntary assumption of the risk is not a complete defense to an action of that type, but is an element of contributory negligence, *Farley v. M M Cattle Company,* 529 S.W.2d 751 (Tex.1975), and consequently the case must be remanded for trial on the negligence theory.

Span argues that because it was a subcontractor and had finished its work and left the construction site prior to the injury, it had no duty to Mr. Bennett. We cannot agree.

■ The defenses of no duty, assumption of the risk, and open and obvious have all been abolished as absolute defenses in negligence cases in Texas. *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978); *Farley v. M M Cattle Company,* supra, and authorities there cited. The reasonableness of the conduct of the defendant, as well as the plaintiff, is now determined by the principles of negligence and contributory negligence. *Parker v. Highland Park, Inc.,* supra at 517.

■ The real thrust of Span's argument is that Mr. Bennett's claim violates the concept of the "relational view of negligence"; i.e., that Mr. Bennett was not of a class of persons or did not occupy a status entitled to the law's protection from Span's acts or omissions under the circumstances. See Keeton, *Negligence, Duty, and Causation in Texas,* 16 Texas L.Rev. 1 (1937). Duty is not the real question here. The question is whether Mr. Bennett was within *the scope of Span's duty* in the particular circumstances existing at the time. This question is often discussed in terms of duty or lack of duty, but the use of such terms has led to much confusion. Prosser on Torts § 53, p. 325 (4th ed. 1971). To impose liability for negligence there still must be a duty and a violation of that duty, with damages proximately caused by such violation. The duty in such cases is that which the law imposes upon all persons—the duty of care—a duty to act as a reasonable prudent person would act under the same or similar circumstances considering the reasonably foreseeable risk or probability of injury to persons similarly situated as the plaintiff. In reality, the determination of *duty of care* and *the violation of that duty,* or *negligence,* involve the same considerations, and the terms are essentially the same. Terry, *Negligence,* 29 Harv.L.Rev. 40 (1915), quoted in Green, *Duties, Risks, Causation Doctrines,* 41 Texas L.Rev. 57 (1962).

■ Bennett's negligence action was not based on Span's failure to warn him of the danger, or on the failure to furnish him a safe place to work, but was predicated upon creating and leaving a dangerous condition with knowledge that other persons working on the roof would be exposed to that danger. There was no special *legal relationship* between Span and Bennett which would in itself bring him within the scope of Span's duty, but the duty of ordinary care at common law may arise not only as a matter of legal relation, but it may also arise from a knowledge of the danger, which in turn depends upon the probability of injury. Prosser on Torts §§ 53 and 54, pp. 324, et seq. (4th ed. 1971);

57 Am.Jur.2d *Negligence* § 36, pp. 382, 383 (1971). Whether or not there is a pre-existing privity in legal relationship between the actor and the person injured, if the circumstances are such that a person of ordinary common sense would recognize that if he did not exercise reasonable care in his conduct with regard to those circumstances, his acts would place another person in danger, the duty to use ordinary care to avoid such danger arises. 57 Am.Jur.2d *Negligence* § 37, pp. 384, 385; § 57, p. 407 (1971), and cases cited. As Dean Prosser noted, the concept of duty has expanded to the point that in many cases, the mere knowledge of serious danger threatening physical harm to another, which one may avoid with little inconvenience, creates a *sufficient relation*, recognized by every moral and social standard, to impose a duty of care. Prosser on Torts § 56, p. 343 (4th ed. 1971). Thus, the duty of care arises from the probability of injury to one who may reasonably be foreseen as likely to be subject to such injury. See *Carlisle v. J. Weingarten, Inc.*, 137 Tex. 220, 152 S.W.2d 1073 (1941); *Mohan v. Safeway Stores*, 237 S.W.2d 813 (Tex.Civ.App.—Waco 1951, no writ). "The risk reasonably to be perceived defines the duty to be obeyed; it is the risk, reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty." *United States v. Schultetus*, 277 F.2d 322 (5th Cir. 1960), *cert. denied*, 364 U.S. 828, 81 S.Ct. 67, 5 L.Ed.2d 56 (1960); 57 Am.Jur.2d *Negligence* § 58, p. 409 (1971).

■ The existence of duty is a question of law when all of the essential facts are undisputed, but when the evidence does not conclusively establish the pertinent facts or the reasonable inferences to be drawn therefrom, the question becomes one of fact for the jury. A particularly appropriate case for such a rule is one as here, where the risk reasonably to be perceived defines the duty to be obeyed; i.e., where knowledge and foreseeability are important elements of duty. *Carlisle v. J. Weingarten, Inc.*, supra; *Southwestern Portland Cement Co. v. Bustillos*, 216 S.W. 268 (Tex.Civ.App. —El Paso 1919, no writ).

■ The summary judgment proof established that Span and its employees and agents knew that workers for other subcontractors would be working upon the roof deck during other phases of the construction and at times when the skylight openings were uncovered. There was also summary judgment proof that manufacturers and contractors installing similar types of roofs commonly provide covers or guard railings to protect persons from falling through those openings. There was evidence of OSHA regulations requiring such covers. In addition, Mr. Gillette of Span Industries testified that his company had a responsibility to see to the safety of persons working on or about the roof, and that his company sometimes covered or otherwise protected such openings, depending upon the circumstances of the particular job. Thus, there was at least some summary judgment evidence that Bennett was within the scope of Span's duty and that there was a violation of that duty.

■ It may be argued that in view of the obvious nature of the open spaces and the admitted warning about them which Mr. Bennett received, contributory negligence on his part was established as a matter of law, but negligence may still be a fact question even when one knows and appreciates the danger, depending upon the measure of care exercised under those circumstances. *Parker v. Highland Park, Inc.*, supra, and cases there cited. And even if contributory negligence is established as a matter of law, under our comparative negligence statute, Tex.Rev.Civ.Stat.Ann. art. 2212a (Supp. 1980–1981), the plaintiff is still entitled to have his negligence compared with that of the defendant, assuming there is a finding of proximate cause in each instance. *Parker v. Highland Park, Inc.*, supra.

For the reasons noted, the authorities relied upon by Span are inapposite, and Mr. Bennett was entitled to a trial on the merits of his negligence action.

The judgment of the trial court is reversed and the cause is remanded for trial.