IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-016-CV





MARTY HOWARD POPE AND SALLY BATES POPE,



 APPELLANTS


vs.





HOLLAND ST. JOHN, M.D.,



 APPELLEE




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 92-00804-A, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 





 Marty Howard Pope and Sally Bates Pope appeal from a summary judgment that
they take nothing by their suit against Holland St. John, a physician. We will reverse the trial-court judgment and remand the cause to the trial court.



THE CONTROVERSY


 St. John, a board-certified internist, was "on call" at Central Texas Medical Center
when Mr. Pope came to the emergency room complaining of back pain and fever. The
emergency-room physician, Virgilio Suarez, examined Pope then consulted by telephone with St.
John, who was at home. Suarez told St. John that he had received a patient for evaluation of fever
and back pain with a history of recent back surgery and epidural injections. Because St. John's
area of specialization was not neurology or neurosurgery, and the Center was not able to handle
cases involving those specialties, St. John recommended that Pope be referred to a hospital with
the requisite neurosurgeon or to the physician who had performed the surgery. St. John had no
further connection with Pope. 

 Pope withdrew from the Center against medical advice after a Round Rock, Texas,
hospital refused to admit him. The following day, Pope was transported by ambulance to an
Austin hospital. There a lumbar puncture revealed that he suffered from meningitis. About a
month later, Pope was admitted to another Austin hospital for treatment of the meningitis and
certain resulting, permanent disabilities. Mr. and Mrs. Pope sued St. John, among others,
alleging that his negligence was a proximate cause of Pope's suffering and disabilities.

 St. John moved for summary judgment on the following grounds: (1) he never
diagnosed, cared for, or treated Pope and thus no physician-patient relationship existed between
them; (2) without such a relationship, St. John owed Pope no duty of care upon which he might
found a claim of negligence. The trial court sustained the motion, rendered judgment accordingly,
and severed Pope's action against St. John from his actions against others. This appeal ensued.



DISCUSSION AND HOLDINGS


 The Popes bring a single point of error, contending the trial court erred in granting
the summary judgment.

 St. John declined to see, examine, or treat Pope and relies upon the following legal
principle to reach his conclusion that he owed Pope no duty of care:



It is a well established principle of law that a physician is liable for malpractice or
negligence only where there is a physician/patient relationship as a result of a
contract, express or implied, that the doctor will treat the patient with proper
professional skill, and there is a breach of professional duty to the plaintiff.



Salas v. Gamboa, 760 S.W.2d 838, 840 (Tex. App.--San Antonio 1988, no writ) (emphasis
added). This means, according to St. John, that the scope of a physician's duty is limited to those
with whom he contracts, expressly or impliedly, regarding treatment; and since St. John declined
to contract with Pope, the latter fell outside the scope of St. John's duty. We disagree that St.
John was entitled to summary judgment on this theory. As shown below, persons may come
under a legal duty to others irrespective of a contract or other legal relation, and we find no
reason or authority for exempting physicians, as a class, from these general rules of negligence
law. And, as we shall see below, the summary-judgment record shows that St. John did more
than simply decline contract relations with Pope.



I.


 The law imposes upon all persons, physicians not excepted, a duty to act as a
reasonably prudent person would act under the same or similar circumstances, considering any
reasonably foreseeable risk or probability of injury to others. The duty is a general one:



Whether or not there is a pre-existing privity in legal relationship between the act
and the person injured, if the circumstances are such that a person of ordinary
common sense would recognize that if he did not exercise reasonable care in his
conduct with regard to those circumstances, his acts would place another in danger,
the duty to use ordinary care to avoid such danger arises.



Bennett v. Span Industries, Inc., 628 S.W.2d 470, 474 (Tex. App.--Texarkana 1982, writ ref'd
n.r.e.) (emphasis added). Irrespective of any contract relationship between St. John and Pope,
the law imposed upon St. John a duty to act with ordinary care toward Pope if the circumstances
were such that a reasonably prudent person in St. John's position would recognize that his acts,
unless done with ordinary care, would place Pope in danger. This formulation of St. John's duty
should not be confused with the proof required to establish its included elements.

 In an affidavit accompanying his motion for summary judgment, St. John stated that
he was "familiar with the standards of care" applicable in the vicinity to "on call internists who
are presented with patients suffering from neurosurgical problems." (1) The standards are, he said,
as follows: (1) on receiving a telephone call from the emergency-room physician, the internist
should "obtain a thorough history from" that physician, regarding the patient; (2) determine from
the patient history if the on-call internist has the specialty qualifications necessary to treat the
patient properly; (3) determine if the hospital has adequate facilities to treat the patient's problem
and, if not, whether to transfer him to another hospital having adequate facilities; and (4) indicate
to the emergency-room physician the need to transfer the patient and suggest a specific hospital
with the required facilities. "This is exactly the action I took," St. John declared in his affidavit,
"notwithstanding there was no patient-physician relationship." This comment implies a very
narrow view of what constitutes a "patient-physician relationship;" the circumstances suggest at
least an implied contract with someone that St. John would take the actions he believes he was
obliged to take and did in fact take. See Dougherty v. Gifford, 826 S.W.2d 668, 674-75 (Tex.
App.-- Texarkana 1992, no writ).

 In any event, St. John's affidavit implicitly concedes that he owed Pope a duty to
identify his ailment, from a thorough medical history, in order that St. John might determine if
the ailment fell within his qualifications to treat and the facilities available at the Center. In
addition, the affidavit concedes that St. John actually undertook to perform those duties even in
the absence of a contract imposing them. As discussed below, the Popes' response to St. John's
motion for summary judgment included the affidavit of another board-certified internist who
declared, in effect, that St. John did not perform with ordinary care precisely these admitted
duties, resulting in a misidentification of Pope's ailment and a mistaken conclusion as to the
qualifications and facilities necessary to treat that ailment. Finally, St. John's affidavit declares
his conclusions that Pope's ailment required the qualifications of a neurosurgeon (rather than those
of an internist such as himself) and facilities that the Center did not have.

 The other board-certified internist was Robert Levine. In his affidavit, he pointed
to the fact that Suarez told St. John, over the telephone, that Pope carried a fever at the time and
that he had recently had back surgery. Given such information, Levine declared, "Dr. St. John,
or any other board certified internist, should have recognized the possibility of an infectious
process, given a history of fever following an invasive procedure." This assumes the standard
of care St. John believed applicable and actually followed by identifying Pope's ailment in order
to reach a conclusion about St. John's qualifications and the hospital facilities required. Levine
added: "Meningitis is a devastating disease, and its prognosis has been clearly shown to depend
on the rapidity with which a diagnosis can be made and treatment instituted;" a timely diagnosis
of Pope's actual ailment would have precluded "the devastating permanent complications" he
suffered.

 By undertaking affirmatively to identify Pope's ailment based on the information
supplied by Suarez, St. John assumed a legal duty of acting with ordinary care in arriving at his
identification and consequent determination of whether he was qualified to treat the ailment. This
is true even if St. John acted voluntarily, that is to say, free of any contract or common-law
obligation to act. See Otis Engineering Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983) ("One
who voluntarily enters an affirmative course of action affecting the interests of another is regarded
as assuming a duty to act and must do so with ordinary care."). Levine's affidavit expressed his
opinion that St. John breached his duty by assuming, in the face of the contrary factors of fever
and recent surgery, that Pope's condition had a non-infectious origin.

 The foregoing was at least sufficient to preclude judgment as a matter of law that
St. John had no duty to Pope in the circumstances, irrespective of whether there was a patient-physician relationship.



II.


 Levine's affidavit also disagreed with St. John regarding the "standard of care"
owed by an internist in St. John's circumstances. Levine stated that St. John should have seen
Pope personally, in light of the information relayed by Suarez, and performed a lumbar puncture
that would have permitted a correct identification of Pope's ailment, a procedure "clearly within
the domain of . . . an internal medicine specialist." This refers to the information supplied by
Suarez to the effect that Pope carried a fever and had recent back surgery.

 After reaching his conclusions based on the information given by Suarez, St. John
was free of any obligation to perform any further services in Pope's behalf, such as conducting
a personal examination, unless Pope would be placed in a worse position than before. "A person
is put in a worse position if the actual danger to him has been increased by the partial
performance, or if in reliance he has been induced to foregoing other opportunities of obtaining
assistance." Fort Bend County Drainage District v. Sbrush, 818 S.W.2d 392, 397 (Tex. 1991),
citing Brownsville Medical Center v. Garcia, 704 S.W.2d 68, 76 (Tex. App.--Corpus Christi 1985,
writ ref'd n.r.e.) (hospital has duty not to allow negligent termination of medical services supplied
patient).

 Levine's affidavit and other parts of the summary-judgment record suggest that the
Popes relied upon St. John's erroneous identification by attempting to obtain Pope's admission
to a hospital having neurosurgical physicians and facilities, resulting in a delay that permitted the
meningitis to inflict serious permanent injuries upon Pope. The summary-judgment record did
not establish the contrary as a matter of law; hence, the record failed to establish as a matter of
law that St. John owed the Popes no legal duty upon which liability might be predicated.



III.


 St. John apparently argues that the Texas Medical Liability Act, Tex. Rev. Civ.
Stat. Ann. art. 4590i (West Supp. 1993), and the Texas Medical Liability and Insurance
Improvement Act, Tex. Rev. Civ. Stat. art. 4590, § 1.03(a)(4) (West Supp. 1993), preclude any
cause of action against St. John outside the context of a duty arising from a contract for medical
care made between St. John and Pope. We do not so interpret the two statutes. See Martin v.
Petta, 694 S.W.2d 233, 237-38 (Tex. App.--Fort Worth 1985, writ ref'd n.r.e.). (2)

 For the reasons given, we hold the trial court erred in awarding St. John judgment
as a matter of law. We therefore reverse the judgment and remand the cause to the trial court.



 John Powers, Justice

[Before Justices Powers, Kidd and B. A. Smith]

Reversed and Remanded

Filed: August 11, 1993 

[Publish]
1.   One should note St. John's affidavit assumes, in this regard, that the patient suffers "from
neurosurgical problems." Thus, his statement of the physician's "standards of care" does not meet
the case where the patient may have had back surgery but has symptoms of an infection, which
might indicate meningitis. The summary-judgment record shows that such was Pope's condition
as reported to St. John by Suarez. While an opposing affidavit speaks to this situation, St. John's
affidavit does not.
2.   The Popes' live petition alleged that St. John "violated the duty owed to Plaintiffs to
exercise the ordinary care and diligence exercised by physicians . . . in the same or similar
circumstances and [was] negligent in [his] treatment of Marty Howard Pope." They may also
have invoked the terms of article 4590i for they alleged that under § 4.01(a) of that statute
"some defendants were given at least 60 days notice" of the Pope's intent to file health care
liability claim. In the Petta decision, the court rejected the idea that the plaintiff relinquished
her claim for common-law negligence by invoking the terms of article 4590i, which limits in 
§ 7.01 the application of the doctrine of res ipsa loquitur. The court stated that "a plaintiff is not
automatically precluded from pleading a cause of action in common law negligence, but in a
proper case may plead a cause of action in common law negligence and also rely upon the
common law doctrine of res ipsa [loquitur]." Petta, 694 S.W.2d at 238. The Popes' action
against St. John does not rely upon res ipsa loquitur but upon simple negligence, which they
showed prima facie in the summary-judgment record.