

**NUMBERS**
**13-09-00470-CV**
**13-09-00627-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MARTHA ARANGO AND AMERICARE**
**NURSING SERVICES, INC.,**                                      **Appellants,**

**v.**

**ANDREA DAVILA,**                                                **Appellee.**

---

**On appeal from the 139th District Court**
**of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Yañez,[1] Garza, and Benavides**
**Memorandum Opinion by Justice Garza**

---

[1] The Honorable Linda Reyna Yañez, former Justice of this Court, was a member of the panel at the time this case was argued and submitted for decision, but did not participate in deciding the case because her term of office expired on December 31, 2010. *See* TEX. R. APP. P. 41.1.

In these two consolidated appeals, we are asked whether an employer's duty to provide a safe workplace may extend to publicly accessible roadways. The trial court ruled in this case that it does, in part due to deemed admissions resulting from the failure of appellants, Martha Arango and Americare Nursing Services, Inc. ("Americare"), to timely respond to a request for admissions. *See* TEX. R. CIV. P. 198.2(c). A jury then awarded over $1.8 million dollars in damages to appellee, Andrea Davila. By seven issues on appeal, Americare and Arango contend that: (1) employers have no duty to make public roadways safe for employees; (2) if an employer does have such a duty, that duty is non-delegable and does not apply to Arango individually; (3) the deemed admissions should have been set aside; (4) the trial court erred by denying their request to designate a responsible third party; (5) evidence of contributory negligence should have been admitted; (6) medical expenses written off by health care providers should not have been included in the damages award; and (7) the trial court erred by assessing post-judgment discovery sanctions against Arango. We reverse and remand.

## I. BACKGROUND

Davila, an in-home nurse employed by Americare, suffered multiple severe injuries on April 13, 2005 when the vehicle she was driving collided head-on with another vehicle on a public road in Palmview, Texas. At the time, Davila was traveling from the home of one patient to the home of another patient. It is undisputed that she was in the course of her employment at the time of the collision and that Americare was a non-subscriber under the Texas Workers' Compensation Act. *See* TEX. LABOR CODE ANN. § 406.033 (West 2006). Davila sued Americare and its president and director,

Arango, asserting claims of negligence, gross negligence, breach of an implied contract, and fraud, and requesting actual and exemplary damages.

Davila later propounded a request for admissions on Americare and Arango. The request asked for, among other things, the following admissions: (1) that Americare failed to provide Davila a safe place to work by "sending [Davila] in[to] an area which Americare and [Arango] knew or in the exercise of reasonable care should have known was an area having a high incidence of motor vehicle accidents and criminal activity"; (2) that Americare "failed to maintain a 'time management and travel scheduling system' which would have prevented [Davila] from being forced to work in an unsafe environment"; (3) that Americare and Arango "negligently and with reckless disregard for the rights of [Davila] scheduled critical home health care visits in a dangerous and unsafe area and in such a manner as to create an unreasonable risk of harm, injury or death to [Davila]"; (4) that, "as a direct and proximate cause [sic] of the negligent and reckless scheduling of critical home health care visits on or about April 13, 2005, [Davila] was seriously injured by a hit and run driver"; (5) that Americare and Arango "scheduled an excessive amount of time critical home health care visits for the sole purpose of maximizing profits for themselves with wanton and reckless disregard for the safety and welfare of their employees"; (6) that Americare and Arango "knew or should have known" that such "excessive" scheduling "created an unreasonable risk of harm, injury or death" to Davila; and (7) that the "excessive" scheduling of visits "in a dangerous area" caused the damages sustained by Davila.[2] According to Davila, the requests for admissions were served on appellants' counsel on November 2, 2007;

---

[2] The requested admissions largely tracked the allegations made in Davila's fifth amended petition.

3

Americare and Arango claim that they were not served with the requests until "late December 2007."

Americare and Arango filed responses to the requests on January 8, 2008, denying or objecting to the majority of the requests. They then moved the trial court to "clarify the status" of the admissions by ruling whether the admissions had been deemed due to the alleged untimeliness of their responses. Americare and Arango also asked the trial court, if it found the admissions deemed, to strike the admissions, arguing that: (1) if the responses were untimely served, it was not intentional but rather "due to an old address being used to serve the request for admissions"; (2) as soon as counsel for Americare and Arango became aware that responses were due, he promptly filed responses; (3) Davila "will not be unduly prejudiced" if the admissions are struck; and (4) "there is good cause for the court to strike the admissions." *See* TEX. R. CIV. P. 198.2(c). The trial court denied both the motion to clarify and the motion to strike.

A partial instructed verdict was subsequently entered against Americare and Arango on the issue of negligence and causation, and only a damages question was submitted to the jury. The jury awarded $1,818,606.20 to Davila, including pre-judgment interest, assessed jointly and severally against Americare and Arango. Americare and Arango filed a motion for judgment notwithstanding the verdict contending that they owed no duty to Davila as a matter of law. On August 3, 2009, the trial court entered judgment on the verdict, thereby implicitly denying the motion for judgment notwithstanding the verdict. These appeals followed.[3]

_____

[3] In appellate cause number 13-09-00627-CV, Americare and Arango challenge the trial court's August 3, 2009 judgment awarding damages to Davila. In appellate cause number 13-09-00470-CV, they

## II. DISCUSSION

### A.    Request to Set Aside Deemed Admissions

We first consider Americare and Arango's third issue, by which they argue that the trial court erred in denying their request to set aside the deemed admissions. Appellants do not dispute that Roberto Puente, their attorney at the time Davila's requests for admissions were propounded, failed to timely respond to the requests. The trial court was therefore correct in considering the admissions deemed. *See* TEX. R. CIV. P. 198.2. Americare and Arango argue, however, that the trial court abused its discretion in declining to permit the withdrawal of the admissions because there was no evidence that Puente acted with "callous disregard or bad faith" in failing to timely respond to the requests.

Once an action is filed, a party can serve written requests for admissions on an adverse party. TEX. R. CIV. P. 198.1. When a party does not serve responses to requests for admissions within thirty days, the matters in the requests will be deemed admitted against that party. TEX. R. CIV. P. 198.2; *Wal-Mart Stores, Inc., v. Deggs*, 968 S.W.2d 354, 355 (Tex. 1998). Any matter deemed admitted is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. TEX. R. CIV. P. 198.3; *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989).

Withdrawal or amendment of an admission is permitted on a showing of good cause and a finding by the trial court that (1) the party relying on the deemed admission will not be unduly prejudiced, and (2) presentation of the merits of the action will be served thereby. TEX. R. CIV. P. 198.3; *Deggs*, 968 S.W.2d at 356. "Good cause is

seek to reverse the trial court's subsequent judgment, dated November 6, 2009, awarding discovery sanctions to Davila. The post-judgment discovery sanctions order is fully addressed below. *See infra* section II.C.

established by showing that the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005). "Even a slight excuse will suffice, especially when delay or prejudice to the opposing party will not result." *Boulet v. State*, 189 S.W.3d 833, 836 (Tex. App.–Houston [1st Dist.] 2006, no pet.); *Spiecker v. Petroff*, 971 S.W.2d 536, 538 (Tex. App.–Dallas 1997, no writ). The party seeking withdrawal of deemed admissions has the burden to establish good cause. *Id.* (citing *Webb v. Ray*, 944 S.W.2d 458, 461 (Tex. App.–Dallas 1997, no writ)). "Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Id.* at 836-37 (citing *Wheeler*, 157 S.W.3d at 443).

We will not set aside a trial court's ruling to permit or deny the withdrawal of deemed admissions unless we find an abuse of discretion. *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996); *Boulet*, 189 S.W.3d at 837. Although a trial court has broad discretion to permit or deny the withdrawal of deemed admissions, it cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles. *Boulet*, 189 S.W.3d at 837 (citing *Wheeler*, 157 S.W.3d at 444). Among those "guiding rules and principles" is the notion that, "absent flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions." *Wheeler*, 157 S.W.3d at 443. Moreover, "[d]iscovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991).

According to Davila, the requests at issue were sent to Puente by certified mail, return receipt requested, on November 2, 2007. The requests were sent to Puente's address as contained in the court's file; however, Puente had since moved from that address and did not file a notice of address change. The return receipt was signed by Emilia Puente, Roberto Puente's mother, and indicated that the item was delivered on December 10, 2007.[4] The responses were therefore due on January 10, 2008. *See* TEX. R. CIV. P. 198.2(a). No responses were served on Davila's counsel by that date.

Later in 2008, Puente withdrew as counsel for Americare and Arango. Appellants' substitute counsel, Peter Ferraro, then filed the above-referenced motion to clarify or strike the deemed admissions. At a hearing on September 18, 2008, Ferraro stated that, when he took over the case file, he noticed a copy of what appeared to be responses to Davila's requests for admissions dated January 8, 2008. He then prepared an affidavit, which was signed by Puente, stating that the responses had in fact been sent to Davila's counsel on January 8. Subsequently, after realizing that Davila's counsel had not in fact received any response to the requests, Ferraro moved to withdraw Puente's original affidavit and submitted a revised affidavit stating that Puente was unsure whether the responses had in fact been sent to Davila's counsel.

Davila contends on appeal that the conduct of attorneys Puente and Ferraro evinces both "flagrant bad faith" and "callous disregard for the rules," thereby authorizing merits-preclusive sanctions. We disagree. There is no evidence in the record establishing that Puente knew of the due date for responding to the requests for admission, nor is there any indication that Puente intentionally signed the original

---

[4] The parties do not explain, and the record does not reveal, why it took over a month for the requests for admissions to be delivered.

7

affidavit knowing it was false, or that Ferraro prepared the affidavit knowing it was false. Moreover, there is no evidence that Puente's failure to timely respond to the requests for admission—which resulted in predictably severe deleterious effects to his client's defense—was in any way intentional or the result of conscious indifference. *See Wheeler*, 157 S.W.3d at 442. Davila emphasizes the fact that, in his two affidavits, Puente gave two contradictory explanations for why no timely responses were filed. However, without any plausible explanation for why Puente would have intentionally or consciously refused to respond to the requests for admissions, we must consider Puente's contradictory affidavits to be merely the product of mistake or negligence, not intent. Under these circumstances, Americare and Arango should not be punished for their counsel's mistakes. *See TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917 ("[A] party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation.").

We find that Americare and Arango met their burden to show good cause for setting aside the deemed admissions, and that there is no evidence of flagrant bad faith or callous disregard for the rules. *See Wheeler*, 157 S.W.3d at 443. Additionally, merits-preclusive sanctions are inappropriate in this case because there is nothing in the record that would "justif[y] a presumption that [Americare and Arango's] defenses lack merit." *See TransAmerican Natural Gas Corp.*, 811 S.W.2d at 918. The trial court

therefore abused its discretion by denying appellants' request to set aside the deemed admissions.[5] We sustain appellants' third issue.

## B.    Duty as a Matter of Law

By their first issue, Americare and Arango argue that, as a matter of law, employers have "no duty to their employees to make public roadways safe or to warn of dangerous neighborhoods surrounding those roadways." They further contend that, "because the existence of a duty is a legal question for the court, the deemed admissions in this case have no effect on question of duty." We construe this issue as a challenge to the trial court's granting of Davila's motion for partial directed verdict on the issue of liability and its denial of Americare and Arango's motion for judgment notwithstanding the verdict.

In a negligence case, the existence of a duty is typically a threshold question of law which the trial court decides based on the particular facts surrounding the occurrence in question. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Nat'l Convenience Stores, Inc. v. Matherne*, 987 S.W.2d 145, 148 (Tex. App.–Houston [14th Dist.] 1999, no pet.). If there is no duty, liability for negligence cannot exist. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999). "[F]actors which should be considered in determining whether the law should impose a duty are the risk, foreseeability, and likelihood of injury

---

[5] Davila argues that she would be unduly prejudiced by the withdrawal of the deemed admissions because withdrawal "would have amounted to an almost-complete restarting of the litigation more than four full years after the accident giving rise to the suit occurred." Americare and Arango contend, to the contrary, that requiring a party to "actually prove its case rather than rely on deemed admissions" does not constitute undue prejudice. *Cudd v. Hydrostatic Transmission, Inc.*, 867 S.W.2d 101, 105 (Tex. App.–Corpus Christi 1993, no writ). However, we need not determine whether the lack of undue prejudice has been established in this case because, as noted, when deeming admissions results in precluding the presentation of the merits of the case, as here, constitutional due process requires the admissions to be withdrawn if there is no evidence of "bad faith or callous disregard for the rules." *See Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005).

weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the employer." *Nabors Drilling, Inc. v. Escoto*, 288 S.W.3d 401, 405 (Tex. 2009) (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)). Foreseeability of the risk has been called the "foremost and dominant consideration" in the duty analysis. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). The test for foreseeability is what a party should, under the circumstances, reasonably anticipate as a consequence of its conduct. *J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 533 (Tex. App.–Austin 2009, no pet.) (citing *Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 465 (Tex. App.–Fort Worth 2002, no pet.)).

"Though the existence of duty is a question of law when all of the essential facts are undisputed, when the evidence does not conclusively establish the pertinent facts or the reasonable inferences to be drawn therefrom, the question becomes one of fact for the jury." *Bennett v. Span Indus., Inc.*, 628 S.W.2d 470, 474 (Tex. App.–Texarkana 1981, writ ref'd n.r.e.); *see Mitchell v. Mo.-Kan.-Tex. R.R. Co.*, 786 S.W.2d 659, 662 (Tex. 1990) ("While foreseeability as an element of duty may frequently be determined as a matter of law, in some instances it involves the resolution of disputed facts or inferences which are inappropriate for legal resolution."), *overruled on other grounds by Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162 (Tex. 2002).

We have already determined that the trial court erred in refusing to set aside the deemed admissions. Barring consideration of those admissions, the "essential facts" of the case—including facts pertinent to the question of whether Americare and Arango could have reasonably foreseen Davila's accident—remain disputed by the parties. *See*

*Bennett*, 628 S.W.2d at 474; *see also Mitchell*, 786 S.W.2d at 662. Because there is a fact issue as to the existence of a duty, the trial court therefore erred in granting Davila's motion for directed verdict on the issue of liability.[6] *See Koepke v. Martinez*, 84 S.W.3d 393, 395 (Tex. App.–Corpus Christi 2002, pet. denied) ("A directed verdict is proper when . . . the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law . . . ."). For the same reason, the trial court did not err in denying Americare and Arango's motion for judgment notwithstanding the verdict. *See* TEX. R. CIV. P. 301 ("[T]he court may render judgment non obstante veredicto if a directed verdict would have been proper . . . .").

We note that, because the deemed admissions were considered by the trial court to have conclusively established the issues of liability and causation, Davila was not afforded the opportunity to present evidence at trial on those issues. Accordingly, the appropriate disposition is to remand the case for a new trial so that Davila may have that opportunity. *See Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 176 (Tex. App.–Dallas 2009, no pet.) ("Appellate courts have broad discretion to remand a case for a new trial in the interest of justice. . . . Remand is appropriate when, for any reason, a case has not been fully developed.").

Appellants' first issue is sustained in part.[7]

---

[6] Although the issue of foreseeability is presently disputed by the parties, we do not intend to imply that the issue must necessarily be submitted to the jury for its consideration. For example, given our ruling that the deemed admissions must be set aside, nothing prevents Americare and Arango from filing a motion for no-evidence summary judgment once the case is remanded to the trial court. If such a motion is found to be meritorious, judgment must be rendered for Americare and Arango as a matter of law, and there would be no question of fact remaining for the jury. *See* TEX. R. CIV. P. 166a(i).

[7] Americare and Arango argue that the deemed admissions in the case cannot be used to establish the existence of a duty, because whether a duty existed is a pure matter of law. We have already concluded that the deemed admissions should have been set aside. Nevertheless, we recognize that the rule regarding requests for admissions does not contemplate or authorize admissions to

11

## C.    Delegability of Duty

By their second issue, Americare and Arango assert that, even if Americare did owe a duty to Davila under the circumstances of this case, that duty is non-delegable to Arango.  Arango argues that she is entitled to judgment as a matter of law because "an officer of the employer has no independent duty to a fellow employee to provide a safe place to work."

Appellants are correct that, "[w]hen the employer is a corporation, the law charges the corporation itself, not the individual corporate officer, with the duty to provide the employee a safe workplace." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996).    However, individual liability may arise if the corporate officer owes an independent duty of reasonable care to the injured party apart from the employer's duty. *Id.* (citing *Werner v. Colwell*, 909 S.W.2d 866, 868 (Tex. 1995)).  "An officer or any other agent of a corporation may be personally as responsible as the corporation itself for tortious acts when participating in the wrongdoing."  *Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631, 634 (Tex. Civ. App.–El Paso 1972, no writ).  An officer or agent of a corporation is always primarily liable for her own torts, even though the principal is also liable, but she cannot be held liable for a wrong in which she has not participated.  *Id.*

---

questions involving points of law.    *Boulet v. State*, 189 S.W.3d 833, 838 (Tex. App.–Houston [1st Dist.] 2006, no pet.) (citing *Gore v. Cunningham*, 297 S.W.2d 287, 291 (Tex. Civ. App.–Beaumont 1956, writ ref'd n.r.e.)).  Accordingly, responses to requests for admissions merely constituting admissions of law are not binding.  *Id.* (citing *Am. Title Co. v. Smith*, 445 S.W.2d 807, 809-10 (Tex. Civ. App.–Houston [1st Dist.] 1969, no writ)).  Here, however, the question of whether a duty existed was a mixed question of law and fact.  *See Mitchell v. Mo.-Kan.-Tex. R.R. Co.*, 786 S.W.2d 659, 662 (Tex. 1990) ("While foreseeability as an element of duty may frequently be determined as a matter of law, in some instances it involves the resolution of disputed facts or inferences which are inappropriate for legal resolution.").  If, at a full trial on the merits, Davila is able to prove that Americare and Arango reasonably foresaw that scheduling home health care visits in the vicinity of the accident was likely to result in injury to Davila, then she will have shown that Americare and Arango owed a duty to her.  Similarly, if Davila can prove that appellants reasonably foresaw that scheduling "excessive" visits would likely result in injury to Davila, then she will have met her burden.

12

Davila's live pleading asserted identical allegations as to both Arango and her corporate employer, Americare. Although the general duty to provide a safe workplace is not applicable to Arango, *see Leitch*, 935 S.W.2d at 117, that does not establish conclusively that Arango owed no duty to Davila as a matter of law. Arango may have owed a duty to Davila—independent of the employer's duty to provide a safe workplace—if she could have reasonably foreseen that her actions could lead to Davila's accident. The issue of whether such a duty existed—along with the issues of whether a breach of any duty occurred and if so, whether the breach caused Davila's damages—are in dispute and must be left to the jury to decide. *See Bennett*, 628 S.W.2d at 474; *see also Mitchell*, 786 S.W.2d at 662. We conclude that Arango was not entitled to judgment as a matter of law on this basis, and we overrule appellants' second issue.

## D. Request to Designate Responsible Third Party

By their fourth issue, Americare and Arango argue that the trial court erred by denying their motion for leave to designate the hit-and-run driver who collided with Davila as a responsible third party. We review a trial court's denial of such a motion for abuse of discretion. *MCI Sales & Serv. v. Hinton*, 272 S.W.3d 17, 36 (Tex. App.–Waco 2008), *aff'd*, 329 S.W.3d 475 (Tex. 2010); *In re Arthur Anderson*, 121 S.W.3d 471, 483-85 (Tex. App.–Houston [14th Dist.] 2003, orig. proceeding).

Section 33.004 of the Texas Civil Practice and Remedies Code sets forth the procedure a defendant must follow if it wishes to designate a responsible third party. See TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (West 2008). Under the statute, a motion to designate a responsible third party "must be filed on or before the 60th day

13

before the trial date unless the court finds good cause to allow the motion to be filed at a later date." *Id.* § 33.004(a). The trial court must grant the motion unless the plaintiff files an objection and establishes that the defendant, after being given the opportunity to replead, "did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure." *Id.* § 33.004(g). Subsection (j) of the statute further provides:

> Notwithstanding any other provision of this section, if, not later than 60 days after the filing of the defendant's original answer, the defendant alleges in an answer filed with the court that an unknown person committed a criminal act that was a cause of the loss or injury that is the subject of the lawsuit, the court shall grant a motion for leave to designate the unknown person as a responsible third party if:
>
> (1)    the court determines that the defendant has pleaded facts sufficient for the court to determine that there is a reasonable probability that the act of the unknown person was criminal;
>
> (2)    the defendant has stated in the answer all identifying characteristics of the unknown person, known at the time of the answer; and
>
> (3)    the allegation satisfies the pleading requirements of the Texas Rules of Civil Procedure.

*Id.* § 33.004(j).

Americare and Arango first moved for leave to designate a responsible third party on August 7, 2008, which was less than sixty days prior to the originally scheduled trial date of September 15, 2008. In the motion, Americare and Arango claimed that an "unknown hit and run driver . . . was indeed the cause of this accident" and asked the trial court for leave to file the motion late "for good cause shown as the circumstances of the second driver [i.e., the driver that collided with Davila] were ascertained in the responses to Defendants['] written discovery on or about July 21, 2008." *See id.* §

14

33.004(a). The trial court denied the motion on September 3, 2008. Trial was subsequently postponed and did not take place until June 9, 2009.

On September 16, 2008, Americare and Arango filed amended answers that, for the first time, alleged that an unknown third party *committed a criminal act* that caused Davila's injuries. *See id.* § 33.004(j). Also on that day, Americare and Arango urged the trial court to reconsider their motion to designate a responsible third party; the trial court declined that request.

Americare and Arango argue on appeal that the trial court abused its discretion in denying their original motion because, even though it was filed within sixty days of the trial setting, "there is no dispute a third party was directly responsible for Ms. Davila's injuries" and Americare and Arango "asked for leave to designate this party several months before the trial" eventually occurred. In response, Davila notes that the amended answers—the first to allege that an unknown party's criminal act was the cause of Davila's injuries—were not filed within sixty days of the defendants' original answer. Davila also argues that, even if the original motion to designate is considered timely because trial did not take place until ten months after the motion was filed, *see id.* § 33.004(a), the trial court did not abuse its discretion in denying the motion because the motion did not identify the alleged responsible third party by name.

We agree with Davila on both points. First, there is no dispute that the amended answers, filed on September 16, 2008, were filed well outside the sixty-day window provided by subsection (j) of the statute. *See id.* § 33.004(j). Accordingly, the trial court did not abuse its discretion by denying Americare and Arango's request pursuant to that subsection. Second, we agree that subsection (j) is the exclusive means by which

15

defendants may designate "unknown," rather than named, responsible third parties. In *In re Unitec Elevator Services*, the First Court of Appeals was similarly asked whether defendants could, under section 33.004, designate unknown responsible third parties even though the defendants first alleged that the criminal acts of unknown third parties were responsible for the plaintiff's injuries more than sixty days after the defendants' original answer. 178 S.W.3d 53, 60 (Tex. App.–Houston [1st Dist.] 2005, orig. proceeding). In construing the statute, the court found that:

> the statute clearly and unambiguously requires a defendant seeking to designate an unknown person as a responsible third party, based on the person's commission of criminal acts causing the loss or injury that is the subject of the lawsuit, to file an answer containing such allegations no later than sixty days from filing its original answer.

*Id.* at 61. The court reasoned as follows:

> While revised section 33.004 clearly recognizes the right of a defendant to submit an unknown person as a responsible third party to a jury for the jury's apportionment of responsibility, subsection (j) provides that as a prerequisite to designating such an unknown person, a defendant must comply with certain pleading requirements likely designed to furnish the other parties with notice that the defendant intends to assert that the claimant's injuries were caused by an unknown criminal. Relators' argument, that subsection (j) merely affords a defendant an additional and independent means to designate unknown persons as responsible third parties, would render the pleading deadlines imposed in subsection (j) meaningless. A defendant would never have an incentive to comply with the pleading requirement in subsection (j) when it could simply wait to designate the unknown person sixty days before trial, and obtain a strategic advantage not intended by the legislature.

*Id.*[8] The court thus concluded that "[t]he structure of section 33.00[4] indicates that the legislature intended to prescribe different procedures for designating named and

---

[8] The *Unitec* court explained that the statute imposes more onerous requirements when a defendant seeks to designate an unknown, rather than a named, responsible third party:

> Subsection (j) expressly applies to the designation of unknown persons as responsible third parties, and, even absent an objection, requires a defendant seeking to designate

16

unnamed persons." *Id.* at 61 n.8. We agree with that conclusion. Therefore, we find that the trial court did not abuse its discretion in denying the original motion to designate, because, even assuming the motion was timely filed, it impermissibly sought to designate an unknown, rather than named, responsible third party. *See id.*

Americare and Arango's fourth issue is overruled.

## E.  Evidence of Contributory Negligence

By their fifth issue, appellants argue that Arango should have been permitted to introduce evidence of contributory negligence "based on Americare's non-subscriber status under the Texas Workers' Compensation Act." They argue that the trial court erroneously denied their motion for new trial on this basis. We review a trial court's denial of a motion for new trial for abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006).

Appellants specifically contend that Americare was Davila's "employer" and Arango was not Davila's "employer"; therefore, according to appellants, while Americare was not permitted to raise the defense that Davila was guilty of contributory negligence, Arango should have been afforded that opportunity. *See* TEX. LABOR CODE ANN. § 406.033(a)(1) (prohibiting an "employer" who does not elect to have workers' compensation insurance coverage from raising a defense that the employee was guilty of contributory negligence). However, Davila sued Arango individually and alleged that Arango was doing business under the assumed name of Americare. Crucially, Arango

---

an unknown person to satisfy specific pleading requirements before a trial court may grant a motion for leave to designate. TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(j). Subsection (f), on the other hand, expressly applies to the designation of named persons, and compels a trial court to grant a motion to designate a named person unless an objection is filed. [*Id.*] § 33.004(f).

*In re Unitec Elevator Servs.*, 178 S.W.3d 53, 61 n.8 (Tex. App.–Houston [1st Dist.] 2005, orig. proceeding).

17

did not file a verified denial that she was doing business under that assumed name. *See* TEX. R. CIV. P. 93(2), (14) (requiring verification by affidavit of any pleading that "the defendant is not liable in the capacity in which [s]he is sued" or that "a party plaintiff or defendant is not doing business under an assumed name or trade name as alleged.").[9] We accordingly conclude, based on the record before us, that the trial court did not abuse its discretion in determining that Arango was Davila's "employer" and therefore could not introduce evidence of Davila's contributory negligence. We overrule appellants' fifth issue.

## F. Medical Expenses

By their sixth issue, Americare and Arango argue that certain medical expenses were improperly included in the award of damages. Specifically, appellants contend that the trial court, in rendering judgment on the verdict, should have excluded from the damages award amounts that were allegedly written off by health care providers.[10]

Section 41.0105 of the civil practice and remedies code provides that, "[i]n addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." TEX. CIV. PRAC. & REM. CODE ANN. § 41.0105 (West 2008). The courts of appeal that have considered this issue have unanimously held that the phrase "actually paid or incurred" does not include expenses adjusted or "written off" by health care

---

[9] We note that there is nothing preventing Arango from filing such a verified denial on remand, nor is there anything preventing Arango from presenting evidence at the new trial that she was not, in fact, Davila's employer. In any event, it will be the responsibility of the trial court to determine whether Arango was Davila's employer based upon all the evidence adduced at the new trial.

[10] Americare and Arango also appear to complain by their sixth issue that the damages award improperly included "expenses that were paid on Ms. Davila's behalf by Americare's insurance." However, Americare and Arango do not provide any argument or authority with respect to this complaint. Therefore, it has been waived. *See* TEX. R. APP. P. 38.1(i).

18

providers because neither the claimant nor anyone acting on the claimant's behalf will ultimately be liable for paying those amounts. *See Matbon, Inc. v. Gries*, 288 S.W.3d 471, 480 (Tex. App.–Eastland 2009, no pet.); *De Escabedo v. Haygood*, 283 S.W.3d 3, 7 (Tex. App.–Tyler 2009, no pet.); *Tate v. Hernandez*, 280 S.W.3d 534, 541 (Tex. App.– Amarillo 2009, no pet.); *Mills v. Fletcher*, 229 S.W.3d 765, 769 (Tex. App.–San Antonio 2008, no pet.). We agree with our sister courts and hold that charges written off by health care providers are not recoverable under section 41.0105. Appellants' sixth issue is sustained. On remand, the trial court is instructed either: (1) to instruct the jury that amounts written off by health care providers may not be included in the damages award; or (2) if such damages are eventually included in the damages award, to reduce the damages award by such amounts.

## G. Post-Judgment Discovery Sanctions

By their seventh issue on appeal, Americare and Arango contend that the trial court erred in assessing post-judgment discovery sanctions against them. We review a post-judgment sanctions order, as well as a ruling regarding the sufficiency of a supersedeas bond, for abuse of discretion. *See Darya, Inc. v. Christian*, 251 S.W.3d 227, 332 (Tex. App.–Dallas 2008, no pet.) (sanctions); *In re Kajima Int'l, Inc.*, 139 S.W.3d 107, 112 (Tex. App.–Corpus Christi 2004, orig. proceeding) (sufficiency of bond).

On October 2, 2009, after the trial court rendered its judgment, Americare and Arango posted a supersedeas bond in the amount of $2,000,467, representing the damages awarded and anticipated interest pending appeal. *See* TEX. R. APP. P. 24.1(a)(2) (permitting a judgment debtor to supersede the judgment pending appeal by

19

filing a good and sufficient bond with the trial court clerk). The trial court found the bond to be insufficient.[11] *See* TEX. R. APP. P. 24.2 (stating that the amount of the bond must equal the sum of compensatory damages, interest during the appeal, and costs, but must not exceed the lesser of (A) fifty percent of the judgment debtor's net worth or (B) twenty-five million dollars). The trial court further ordered Americare and Arango to respond to outstanding discovery requests regarding Arango's net worth, and ordered Arango to appear for deposition.[12] Americare and Arango then filed a second bond on October 20, 2009, which the trial court also found to be insufficient.[13] The trial court again ordered Americare and Arango to respond to discovery requests, appear for deposition, and pay fines of $1,000 per day. Arango's deposition was scheduled to be taken on November 4, 2009, but she did not appear. That same day, Americare and Arango filed a third supersedeas bond and sought protection from the pending discovery order.[14] The trial court again found the bond insufficient and ordered Arango to pay $19,000 in sanctions, representing $4,000 in per diem fines and $15,000 in attorney's fees. The trial court finally approved a supersedeas bond on November 12, 2009.

---

[11] The trial court specifically found that the surety on the original bond, Insurors Indemnity Company ("IIC"), was only authorized to write bonds up to a maximum of $831,000. Further, though IIC was re-insured by General Reinsurance Company ("GRC") for the balance of the bond, nothing on the face of the bond obligated GRC to pay any part of the judgment.

[12] On October 30, 2009, Americare and Arango filed an emergency motion with this Court to vacate the trial court's October 26, 2009 order determining that the first supersedeas bond was insufficient and ordering discovery. On November 3, 2009, we denied appellants' request to vacate the trial court's finding and discovery order, but we granted appellants' request to stay execution on the judgment for twenty days "to allow appellants time to file a good and sufficient bond, the sufficiency of which shall be determined by the trial court."

[13] Unlike the original bond, the October 20, 2009 bond explicitly stated that both IIC and GRC are co-sureties.

[14] IIC and GRC were also co-sureties on the third bond.

20

Americare and Arango contend that the award of sanctions was an abuse of discretion by the trial court because the second and third bonds were in fact sufficient, and therefore, Arango's net worth was irrelevant. We agree. A sufficient surety is an entity or individual that is a legal entity, separate from the judgment debtor and not a party to the suit, whose solvency and ability to pay the judgment are established. *TransAmerican Natural Gas Corp. v. Finkelstein*, 905 S.W.2d 412, 414 (Tex. App.–San Antonio 1995, writ dism'd). The trial court found that the second and third bonds were insufficient because they did not state on their face which portion of the judgment each co-surety would pay in the event the appeal failed, and because one of the sureties was limited to paying only $831,000, which is far less than the total required amount of the bond. However, nothing in the applicable rules requires that a specific apportionment between co-sureties appear on the face of the bond, and, in fact, the law implies a particular apportionment that is adequate to protect Davila. *Cf.* TEX. R. APP. P. 24.1(e) (authorizing the trial court to "make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause"). Under the general rule set forth in the Restatement (Third) of Suretyship and Guaranty, "a cosurety's contributive share is the aggregate liability of the cosureties to the obligee divided by the number of cosureties." RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 57(1) (1996). In other words, if the bond does not provide contrary terms, a court will assume that each of two co-sureties is liable for half of the bond amount. However, if, as here, a co-surety's liability is limited to less than its contributive share, "[t]he contributive shares of the other cosureties are recalculated by subtracting from the aggregate liability of the cosureties the contributive share of the secondary obligor

21

whose obligation is so limited, and dividing by the number of cosureties whose obligations are not so limited." *Id.* § 57(2)(a). Here, although one of the co-sureties was limited in its liability to $831,000, the other co-surety was not so limited, and the total amount payable by both co-sureties exceeded the amount of the bonds. Therefore, the October 20, 2009 bond was adequate to protect Davila, and the trial court abused its discretion in determining that it was insufficient. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion . . . .").

Because the October 20, 2009 bond should have been ruled sufficient, the discovery order was therefore unwarranted, and the trial court's award of sanctions for violating that discovery order also constituted an abuse of discretion. We sustain appellants' seventh issue.

### III. CONCLUSION

We reverse the judgments of the trial court, including its order of post-judgment discovery sanctions, and we remand for a new trial consistent with this opinion.

DORI CONTRERAS GARZA
Justice

Delivered and filed the
19th day of May, 2011.

22